1  Thomas Spielbauer, Esq.
   SBN 78281
2  THE SPIELBAUER LAW FIRM
   1250 Oakmead Parkway, Suite 210
3  Sunnyvale, CA 94085
   MAIL: Post Office Box 698
4  Santa Clara, CA 95050
   (408)451-8499
5  Fax: (610)423-1395
   thomas@spielbauer.com
6
7  Attorneys for Ruthie Hillery, Defendant
        and the Spielbauer Law Firm, Defendant

8              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
9

10 SAXON MORTGAGE SERVICES, INC.,          No. 08-CV-04357-EMC
   f/k/a MERITECH MORTGAGE SERVICES,
11 INC., a Texas Corporation; and CONSUMER
   SOLUTIONS REO, LLC, a Delaware Limited   NOTICE OF MOTION TO DISMISS
12 Liability Company,                       AND MOTION TO DISMISS
                                            PLAINTIFFS' COMPLAI NT;
13                          Plaintiff.      MEMORANDUM OF POINTS AND
                                            AUTHORITIES
14

15 v.s.                                     Date: November 26, 2008
                                            Time: 10:30 a.m.
16                                          The Honorable Edward M. Chen
                                            Courtroom C, 15th Floor
17                                          450 Golden Gate Avenue
   RUTHIE B. HILLERY, an Individual; THE    San Francisco, CA 94102
18 SPIELBAUER LAW FIRM, an Unknown
   Business Entity; and DOES 1 through 50,
19 inclusive,

20                          Defendants.

21

22 TO THE PLAINTIFFS AND THEIR COUNSEL OF RECORD:

23      **PLEASE TAKE NOTICE** that on **Wednesday, November 26, 2008 at 10:30 a.m.** or

24 as soon thereafter as the matter may be heard, before the **Honorable Edward M. Chen in**

25 **Courtroom C, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102**, Defendants

26 Ruthie B. Hillery  and the Spielbauer Law Firm ("Spielbauer") will and do hereby move this

27 Court to dismiss, with prejudice, plaintiffs' complaint ("Complaint") on file herein.

28 //

1       This motion is made and based on Federal Rules of Civil Procedure 12(b)(1), Lack of

2   Subject Matter Jurisdiction; 12(b)(5), Failure to Properly Serve; 12(b)(6), Failure to State a

3   Claim Upon Which Relief Can Be Granted; 12(b)(7) and 19, Failure to Join Necessary Parties.

4   This motion is based on this notice, the memorandum of points and authorities filed herein, the

5   Declarations of Ruthie Hillery and Thomas Spielbauer, the Court's files concerning this action,

6   together with those facts and documents of which the parties request judicial notice and/or

7   matters which judicial notice is proper, as well as any oral argument that may be presented at

8   the time of the hearing.

9   Dated: October 16, 2008

10

11                   THE SPIELBAUER LAW FIRM

12

13

14               by Thomas Spielbauer, Esq.
                 Attorney for Defendants Ruthie B. Hillery
15                  and the Spielbauer Law Firm

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ iii

TABLE OF AUTHORITIES ................................................................................................. iv

TABLE OF EXHIBITS ....................................................................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

LEGAL STANDARDS FOR DISMISSAL .............................................................................. 1

    Absence of Federal Question Jursidiction, Rule 12(b)(1) ................................................ 1

    Insufficient Service of Process, Rule 12(b)(5) ................................................................ 2

    Failure to State a Claim, Rule 12(b)(6) .......................................................................... 2

    Failure to Join an Indispensible Party, Rule 12(b)(7) and Rule 19 ................................. 2

FACTUAL DESCRIPTION OF CASE ..................................................................................... 4

NEITHER PLAINTIFF HAS STANDING;
    NEITHER PLAINTIFF IS THE REAL PARTY IN INTEREST .................................... 9

SAXON'S TERMINATION OF STANDING ....................................................................... 13

MERS .................................................................................................................................... 14

FEDERAL RULES OF CIVIL PROCEDURE 12(B)(7) AND 19 ........................................... 16

FAILURE TO STATE A CLAIM
    UPON WHICH RELIEF CAN BE GRANTED ......................................................... 17

NO FEDERAL QUESTION ................................................................................................. 18

FAILURE TO PROPERLY SERVE ...................................................................................... 22

PRAYER ............................................................................................................................... 23

1

# TABLE OF AUTHORITIES

2

**Federal Statutes:**

3
15 U.S.C. §1635(b) ............................................................................ 6

4
15 U.S.C. §1640 ............................................................................... 6

5
28 U.S.C §1331 ........................................................................... 1, 18

6
28 U.S.C. §1447(c) ........................................................................... 2

7
Article III of the United States Constitution ................................... 19

8

9

10

**Federal Rules:**

11
Federal Rule of Civil Procedure 12(b)(1) ....................................... 17

12
Federal Rule of Civil Procedure 12(b)(5) ....................................... 17

13
Federal Rule of Civil Procedure 12(b)(6) ....................................... 17

14
Federal Rule of Civil Procedure 12(b)(7) ....................................... 16

15
Federal Rule of Civil Procedure 12(h)(3) ......................................... 1

16
Federal Rule of Civil Procedure 19 ....................................... 3, 16, 17

17

18

**Federal Cases:**

19
*Adams v. Allied Signal Gen. Aviation Avionics* (8th Cir. 1996) 74 F.3d 882 ........................ 2, 22

20
*Ankenbrandt v. Richards* (1992) 504 US 689 .......................................................... 19

21
*Ansley v. Ameriquest Mortgage Company* (9th Cir. 2003) 340 F.3d 858 ................................... 2

22
*Anusbirian v. Trugreen/Chemlawn, Inc.* (6th Circuit 1996) 72 F.3d 1253 .................................. 2

23
*Arbaugh v. Y&H Corporation* (2006) 546 U.S. 500 .................................................... 1

24
*Balisteri v. Pacifica Police Department* (9th Circuit 1990) 901 F.3d 696 ................................... 2

25
*Bell v. Hood* (1946) 327 US 678 .................................................................... 19

26
*Caterpillar Inc. v. Williams* (1987) 482 U.S. 386 ..................................................... 2

27
*Cook v. Peter Kiewit Sons Co.* (9th Cir. 1985) 775 F2d 1030 .......................................... 19

28

*Dawavendewa v. Salt River Project Agricultural Improvement & Power District*
(9th Cir. 2002) 276 F.3d 1150 ........................................................................ 3, 16

*Federal Deposit Insurance Corporation v. Houde* (1st Circuit 1996) 90 F.3d 600 .................. 10

*Gemini Servs., Inc. v. Mortgage Electronic Registration System, Inc. (In re Gemini)*
(Bankr. S. D. Ohio 2006) 350 BR 74 ................................................................. 15

*Glancy v. Taubman Centers, Inc.* (6th Cir. 2004) 373 F.3d 656 ........................................ 3, 17

*Hagans v. Lavine* (1974) 415 US 528 ................................................................... 19

*Harmony Homes v. United State ex rel. Small Business Administration*
(M.D. Florida 1996) 936 F. Supp. 907 ................................................................ 10

*Herrick Company v. SCS Comms.* (2nd District 2001) 251 F.3d 315 ........................................ 1

*Hishon v. King & Spalding* (1984) 467 U.S. 69 ......................................................... 18

*Howery v. Allstate Insurance Company* (5th Cir. 2001) 243 F.3d 912 ...................................... 1

*In re Foreclosure Actions* (N.D. Ohio November 14, 2007) 2007 WL 43034554 .............. 11, 12

*In re Foreclosure Cases* (N.D. Ohio October 31, 2007) 2007 WL 3232430 ...................... 11, 12

*In re Foreclosure Cases* (S.D. Ohio 2007) 521 F. Supp. 2d 650 ................................. 9, 11, 13

*In re Leisure Time Sports, Inc.* (B.A.P. 9th Circuit) 194 B.R. 859 ............................................ 10

*In re Worcester* (9th Cir. 1987) 811 F.2d 1224 ......................................................... 21

*Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*
(1982) 456 U.S. 694 ...................................................................................... 1

*International Primate Protestant League v. Tulane Education Fund* (1991) 500 U.S. 72 .......... 2

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.* (3d Cir. 1993) 11 F.3d 399 .............. 3, 16

*Kokkonen v. Guardian Life Ins. Co. of America* (1994) 511 U.S. 375 ................................... 19

*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555 ..................................................... 1

*Marshall v. Desert Properties Co.* (9th Cir. 1939) 103 F2d 551 ........................................ 20

*Merrill Lynch, Pierce, Fennell & Smith, Inc. v. ENC Corp.* (9th Cir. 2006) 464 F.3d 885 ......... 3

*Montgomery Scott, Inc. v. Shepard Niles, Inc.* (3d Cir. 1993) 11 F.3d 399 ............................. 16

*Morongo Band of Mission Indians v. California State Board of Equalization*
(9th Cir. 1988) 858 F2d 1376 ........................................................................ 3, 19

*Mortgage Electronic Registration System v. Estrella* (7th Circuit 2004) 390 F.3d 522 ............. 16

*Musson Theatrical, Inc. v. Federal Express Corp.* (6th Cir. 1996) 89 F3d 1244 ...................... 19

*Newman v. Universal Pictures* (9th Circuit 1987) 813 F.2d 1519 ................................................. 2

*Northeast Erectors Association v. Secretary of Labor* (1st Circuit 1995) 62 F3d 37, 39 .......... 19

*Pit River Home & Agricultural Cooperative Association v. U.S.*
(9th Cir. 1994) 30 F.3d 1088 ...................................................................................... 3, 16, 17

*Rivet v. Regions Bank of Louisiana* (1998) 522 U.S. 470 ................................................... 2

*Schlumberger Indus., Inc. v. Nat'l Sur. Corp.* (4th Cir. 1994) 36 F.3d 1274 ......................... 3, 17

*Shulthis v. McDougal* (1912) 225 US 561 ...................................................................... 20, 22

*Steel Company v. Citizens for a Better Environment* (1998) 523 US 83 ................................ 1, 19

*U.S. v. Morton* (1984) 467 U.S. 822 .............................................................................. 1

*U.S. v. Rose* (9th Circuit 1994) 34 F.3d 901 ................................................................. 3

*United Investors Life Insurance Company v. Waddell & Reed, Inc.*
(9th Circuit 2004) 360 F.3d 960 ................................................................................. 1

*Virgin v. County of San Luis Obispo* (9th Cir. 2000) 201 F3d 1141 ..................................... 20

*Western Mining Council v. Watt* (9th Circuit 1990) 643 F.2d 618 .................................... 2

*Yamamoto v. Bank of New York* (9th Circuit 2003) 329 F.3d 1167 ................................... 6

**State Statues:**

California Civil Code §2924c(b)(1) ........................................................................... 7, 21

**State Cases:**

*Anderson v. Heart Federal Savings* (1989) 208 Cal.App.3d 202 ....................................... 21

*Bank of America National Trust & Savings Association v. Reidy* (1940) 15 Cal. 2d 243 ......... 21

*Bisno v. Sax* (2d Dist. 1959) 175 Cal. App. 2d 714 ....................................................... 21

*Brown v. Busch* (3d Dist. 1957) 152 Cal. App. 2d 200 ................................................... 22

*Dimock v. Emerald Properties LLC* (4th Dist. 2000) 81 Cal. App. 4th 868 .......................... 22

*Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496 .......................................... 21

*Hunt v. Smyth* (1st Dist. 1972) 25 Cal. App. 3d 807 ..................................................... 21

*Lo Nguyen v. Calhoun* (6th District 2003) 105 Cal.App.4th 428 ..................................... 21

*Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888 ............................................... 21

*Moeller v. Lien* (1994) 25 Cal.App.4th 822 ............................................... 21

*Mortgage Electronic Registration System, Inc. v. Nebraska Department of Banking and Finance* (Nebraska 2005) 704 N.W.2d 784 ............................................... 14

*Smith v. Williams* (1961) 55 Cal. 2d 617 ............................................... 22

*Stirton v. Pastor* (4th Dist. 1960) 177 Cal. App. 2d 232 ............................................... 22

*System Inv. Corporation v. Union Bank* (1971) 21 Cal.App.3d 137 ............................................... 21

*Whitman v. Transtate Title Co.* (4th Dist. 1985) 165 Cal. App. 3d 312 ............................................... 21

**Treatises:**

*Black's Law Dictionary* (6th Edition 1991). ............................................... 15

Comptroller of Currency, OCC Bulletin 2004-19 (May 7, 2004) ............................................... 6

*Fannie Mae Single Family Servicing Guide* ............................................... 14

*Federal Practice and Procedure* by Wright, Miller, and Cooper ............................................... 9, 11, 16

*Foreclosures*, National Consumer Law Center 2008 ............................................... 10, 14

*MERS Recommended Foreclosure Procedures* ............................................... 14, 15

Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages ............................................... 21

Official Staff Commentary §§226.15(d)(4) -1, 226.23(d)(4)-1 ............................................... 6

*Process Loans, Not Paperwork*, MERS brochure ............................................... 14

# TABLE OF EXHIBITS

Exhibit #

Ruthie Hillery's Executed Cancellation to New Century of August 21, 2006 ........................... 1

New Century's March 21, 2007 Letter Acknowledging the August 21, 2006 Rescission .......... 2

Notice of Default Recorded May 9, 2008 ..................................................................................... 3

Saxon's letter of May 1, 2008 ...................................................................................................... 4

Ruthie Hillery's RESPA, Fair Debt Collection, 2943, Truth in Lending,
and California Legal Remedies Act Letters .................................................................................. 5

Saxon's Letter of Response dated September 12, 2008 ............................................................... 6

Saxon's Letter of Assignment Dated September 16, 2008 ........................................................... 7

Trust Deed Assignment by MERS /(New Century) to Consumer Solutions REO
on July 21, 2008 ........................................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## LEGAL STANDARDS FOR DISMISSAL

### Absence of Federal Question Jursidiction, Rule 12(b)(1):

A motion to dismiss for lack of subject-matter jurisdiction seeks dismissal of the lawsuit because the court lacks the authority to hear the dispute.[1]  A trial court has the duty to raise this question of jurisdiction *sua sponte*.[2]  A motion to dismiss pursuant to 12(b)(1) is a proper vehicle to challenge a plaintiff's standing to bring the action.[3]  A party cannot waive, either intentionally or inadvertently, is right to object to the court's lack of subject-matter jurisdiction.[4]  Defects in the Court's subject matter jurisdiction can even be raised for the first time on appeal.[5]

Federal-question jurisdiction arises when there is either constitutional or statutory authority to bring the suit.[6]  The constitutional grant of authority includes cases in which a federal question is <u>an essential element</u> of the action.[7]  The statutory grant of authority occurs when the allegations involve a <u>substantial disputed question</u> of federal law or require the resolution of a substantial federal question.[8]

---

[1] See generally *U.S. v. Morton* (1984) 467 U.S. 822, 828 (subject-matter jurisdiction defines court's authority to hear given type of case).

[2] Federal Rule of Civil Procedure 12(h)(3); *United Investors Life Insurance Company v. Waddell & Reed, Inc.* (9th Circuit 2004) 360 F.3d 960, 967.

[3] See *Steel Company v. Citizens for a Better Envirnonment* (1998) 523 U.S. 83, 102; *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560.

[4] *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee* (1982) 456 U.S. 694, 702; *Herrick Company v. SCS Comms.* (2nd District 2001) 251 F.3d 315, 321.

[5] Federal Rule of Civil Procedure 12(h)(3); *Arbaugh v. Y&H Corporation* (2006) 546 U.S. 500, 506.

[6] *See* 28 U.S.C. §1331.

[7] *Howery v. Allstate Insurance Company* (5th Cir. 2001) 243 F.3d 912, 917.

[8] *Howery v. Allstate Insurance Company* (5th Cir. 2001) 243 F.3d 912, 917.

When there is no subject-matter jurisdiction, remand is mandatory.[9]  "In scrutinizing a complaint in search of a federal question, a court applies the well-pleaded complaint rule. [Citation].  Under the well-pleaded complaint rule, a federal question must appear **on the face** of a properly pleaded complaint. [Citation]."[Emphasis mine.][10]

**Insufficient Service of Process, Rule 12(b)(5):**

Federal Rule of Civil Procedure 12(b)(5) authorizes the bringing of a motion to dismiss when there has been insufficient service of process.  When service of process is insufficient, the court may dismiss the suit or quash the service.[11]

**Failure to State a Claim, Rule 12(b)(6):**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be brought where a plaintiff fails to state a claim upon which relief can be granted.  Under such a motion, although the court must assume the truth of well-pleaded factual allegations, the court need not accept as true any contentions, arguments or conclusions of law stated in the complaint.[12]  A Rule 12(b)(6) dismissal is proper where there is either "a lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."[13]

**Failure to Join an Indispensible Party, Rule 12(b)(7) and Rule 19:**

The purpose of a Federal Rule of Civil Procedure 12(b)(7) motion to dismiss is to challenge the plaintiffs' failure to join an indispensable party under Federal Rule of Civil Provedure 19.   Rule 19 requires joinder of a party whose absence will prevent complete relief

---

[9] 28 U.S.C. §1447(c);  *International Primate Protestant League v. Tulane Education Fund* (1991) 500 U.S. 72, 89; *Anusbirian v. Trugreen/Chemlawn, Inc.* (6th Circuit 1996) 72 F.3d 1253, 1254.

[10] *Ansley v. Ameriquest Mortgage Company* (9th Cir. 2003) 340 F.3d 858, 861, citing to *Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 392 and to *Rivet v. Regions Bank of Louisiana* (1998) 522 U.S. 470, 475.

[11] See *Adams v. Allied Signal Gen. Aviation Avionics* (8th Cir. 1996) 74 F.3d 882, 886.

[12]  *Western Mining Council v. Watt* (9th Circuit 1990) 643 F.2d 618, 624.

[13]  *Balisteri v. Pacifica Police Department* (9th Circuit 1990) 901 F.3d 696, 699; *Newman v. Universal Pictures* (9th Circuit 1987) 813 F.2d 1519, 1521-1522.

2

from being granted to current parties and is intended to protect the legitimate interests of absent parties and to discourage duplicate litigation.[14]

A Court should also dismiss a suit under Federal Rule of Civil Procedure 19 for failure to join an indispensable, absent party when that party (1) is necessary to the suit, (2) cannot be joined, and (3) is indispensable to the resolution of the suit.[15]

A dismissal under Rule 12(b)(7) and Rule 19  is appropriate when there is an absence of a necessary party to the suit whose absence would make complete relief is not possible among the existing parties.[16]   Dismissal is appropriate when to proceed with the existing lawsuit would leave an existing party subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the claimed interest.[17]  An absent party is indispensable when the judgment that may be rendered will be prejudicial to the absent party and the existing parties[18] and any judgment rendered without the absent party will be inadequate.[19]

//

//

---

[14] *U.S. v. Rose* (9th Circuit 1994) 34 F.3d 901, 908.

[15] Federal Rule Civil Procedure 19(a), (b); *Pit River Home & Agricultural Cooperative Association v. U.S.* (9th Circuit 1994) 30 F.3d 1088, 1099.

[16] Federal Rule of Civil Procedure 19(a)(1); *Dawavendewa v. Salt River Project Agric. Improvement & Power District* ,(9th Cir. 2002) 276 F.3d 1150, 1155; *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.* (3d Cir. 1993) 11 F.3d 399, 405.

[17] Federal Rule of Civil Procedure 19(a)(2)(ii); *United States ex rel. Morongo Band of Mission Indians v. Rose* (9th Circuit 1994) 34 F.3d 901, 908.

[18] Federal Rule of Civil Procedure 19(b); *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.* (4th Cir. 1994) 36 F.3d 1274, 1287; *Pit River Home & Agricultural Cooperative Association v. U.S.* (9th Cir. 1994) 30 F.3d 1088, 1101; *see Merrill Lynch, Pierce, Fennell & Smith, Inc. v. ENC Corp.* (9th Cir. 2006) 464 F.3d 885, 891, *petition for cert. filed*, 75 U.S. L.W. 3483 (U.S. Mar. 5, 2007) (No. 06-1204).

[19] . Federal Rule Civil Procedure 19(b);  *Glancy v. Taubman Centers, Inc.* (6th Cir. 2004) 373 F.3d 656*,  672;  Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274, 1287; *Pit River Home & Agricultural Cooperative Association v. U.S.* (9th Cir. 1994) 30 F.3d 1088, 1101-02.

## FACTUAL DESCRIPTION OF CASE

During July/August 2006, Ruthie Hillery had a loan with World Savings. During these months, Ms. Hillery, a senior citizen, who is now 72 years of age, was contacted by United Vision Financial through a telemarketing call.

Representatives of United Vision repeatedly contacted Ms. Hillery urging her to refinance. Jesse of United Vision specifically advised Ms. Hillery that United Vision (the mortgage broker) was a different type of company and that they had a "Senior Citizen" loan program whereby she would not have to make a payment for 5 years. Ruthie was 70 years old at the time. As a result of the numerous and repeated representations by the United Vision representatives, Ms. Hillery applied for a loan over the phone.

Shortly thereafter, Ms. Hillery was advised that the loan documents were ready. Ruthie Hillery received no loan documentation nor disclosures prior to the loan execution on August 18, 2006. A notary came to her home on Friday, August 18, 2006 with the documents and conducted a signing on behalf of United Vision and New Century Mortgage. Ms. Hillery did not understand the documents she was signing but was ushered through the signing process without any meaningful explanation. Her son, Fred Hillery, was out of town during this process and was unaware of this loan signing.

Her son returned home shortly after Ms. Hillery signed the loan documents and within the three day rescission period. He reviewed the documents and quickly realized the predatory, abusive and costly characteristics of this loan. As a result, Fred Hillery had his mother immediately execute a cancellation. Amazingly, Fred Hillery called New Century Mortgage for instructions as to tendering the rescission. The New Century Mortgage Representative attempted to mislead Fred Hillery, advising him that New Century would not accept a rescission if tendered to it directly. Ms. Hillery nonetheless immediately and legally tendered the cancellation to New Century Mortgage in the manner demanded, and retained a confirmation of delivery proof. She did this on Monday, August 21, 2006. Thereafter, Ms. Hillery returned the cash back check in the amount of $48,311 to Financial Title Company. A copy of the cancellation is attached as Exhibit 1 to this motion.

1      Four months later, Ruthie Hillery received a letter from New Century Mortgage,  in

2  December of 2006, stating that she was in default.   Ms. Hillery and her son Fred advised New

3  Century of the cancellation of the loan, and awaited instructions from New Century Mortgage.

4  None never came.  Finally, seven months later, on March 19, 2007, New Century Mortgage

5  acknowledged receipt of Ruthie Hillery's August 21, 2006 rescission.  New Century

6  representatives acknowledged the cancellation of the loan but never carried through on their

7  legal obligations pursuant to Truth in Lending, nor provided to Ms. Hillery instructions as to

8  how she was to tender.  A copy of New Century's acknowledgment of rescission of March 21,

9  2007, is attached to this motion as  Exhibit 2.

10      New Century's seven month tardy response to Ruthie Hillery's rescission had

11  devastating consequences upon Ruthie Hillery.  While Ruthie Hillery could have been restored

12  to her World Savings loan with a timely honor of rescission, this was no longer possible seven

13  months later.  The subprime meltdown had already commenced, with one of the first areas to

14  experience the loss of property values being Ruthie Hillery's home town of Pittsburg,

15  California.  This upside-down status made refinancing impossible.  Additionally, New Century

16  Mortgage very shortly thereafter filed for Chapter 7 bankruptcy and is now no longer an

17  existent entity.  It is legally dead.   Any "debt" is simply gravy to those business entities which

18  are attempting to collect money they never lent.

19      It may be of interest that there has been some coverage of Ruthie Hillery's matter in the

20  news[20].

21      The March 19, 2007 letter was the last communication New Century Mortgage had with

22  Ruthie Hillery concerning this alleged mortgage.  Then, out of the blue, Plaintiff Saxon wrote to

23  Ruthie Hillery (through her then attorneys) on September 28, 2007.  In its letter, Saxon

24  demanded that Ruthie Hillery tender $266,379.31 before it would release the security on the

25  property.  This letter was written to Ruthie Hillery a year and a month after she rescinded the

26  loan with New Century Mortgage.

27

28     [20] http://www.realestatejournal.com/buysell/mortgages/20070313-hagerty.html;
http://abclocal.go.com/wjrt/story?section=news/consumer&id=5121258.

New Century Mortgage was obligated to cancel the mortgage and return to Ruthie

Hillery the security with 20 days after receipt of the notice of rescission.  In other words, New

Century Mortgage was required to effect the mechanics of rescission by mid September 2006.

Failing any kind response by New Century, "the ownership of  the property vests in the obligor

without obligation on his part to  pay for it."[21]

The Federal Reserve has taken the position that the voiding of a security interest is

automatic upon sending a rescission notice, particularly during a foreclosure.[22]

*Yamamoto v. Bank of New York* [23], a case which lenders like to cite, provides no relief

since New Century sat on its hands for nearly a year, at least seven months, concerning this

matter. In *Yamamoto*, BNC and the Bank of New York responded in a prompt fashion to the

rescission.   New Century's bankruptcy is no excuse.  Indeed, *Yamamoto* likewise involved

bankruptcy proceedings.  In *Yamamoto*, the homeowners did not face the upside down turn

around in home values as exists in this matter.   New Century, and Saxon, and Consumer

Solutions REO for that matter, fell asleep at the switch, enjoying a one to two year snooze in

this case.

By the time that Saxon came on the scene, on September 28, 2007, the rescission with

New Century Mortgage was set in concrete, the one year statute of limitations pursuant to 15

U.S.C. §1640 having expired.

As briefly mentioned supra, in September 2007, Saxon made a demand upon Ruthie

Hillery.  This demand came out of the blue and with no citation to the right nor authority of

Saxon to do so.   Subsequently, on or about May 9, 2008, and again coming out of the blue,

MERS, through T.D. Service Company, caused to be recorded a notice of default on the

property of 2119 Goff Avenue, Pittsburg, CA  94565.  This notice of default is attached as

Exhibit 3 to this Motion. MERS demanded an arrearage of $49,743.40 from Ruthie Hillery.

---

[21] 15 U.S.C. §1635(b).

[22] Please see the Official Staff Commentary §§226.15(d)(4) -1, 226.23(d)(4)-1; See also Comptroller of Currency, OCC Bulletin 2004-19 (May 7, 2004).

[23] *Yamamoto v. Bank of New York* (9th Circuit 2003) 329 F.3d 1167.

1     According to the Notice of Default filed on May 9, 2008, MERS claimed to be the

2  Nominee for plaintiff Consumer Solutions REO, LLC.  Over a month and a half later, on or

3  about July 21, 2008, this same MERS then  assigned the note and trust deed to Consumer

4  Solutions REO as Nominee for the no longer existent and bankrupt New Century Mortgage.

5  This Assignment is Exhibit D of plaintiff's complaint, an Exhibit 8 to this motion.  It must be

6  remembered that under California Law, a notice of default must include the name, mailing

7  address, and telephone number of the beneficiary.[24]   This Notice of Default (Exhibit 3) reflects

8  that MERS and Consumer Solutions REO were the beneficiaries when in fact the subsequent

9  assignment (Exhibit 8) reflects that Consumer Solutions had NO beneficial interest of any kind.

10  The lack of chain of the note and trust deed corroborates this lack of beneficial interest.  And of

11  course, there is no chain establishing that MERS had any interest of any kind.

12     In order words, on the face of these documents, Consumer Solutions REO initiated the

13  foreclosure of Ruthie Hillery's home a month and a half before it had any legal right to do so.

14  And MERS supposedly was the nominee of two separate and mutually exclusive beneficiaries,

15  New Century Mortgage and Consumer Solutions REO, both at the same time for the same trust

16  deed. This indeed adds new meaning to the term, "Mortgage Magic."

17     Not to be left out, Saxon took credit for the initiation of the foreclosure proceeding in a

18  letter to Ruthie Hillery dated May 1, 2008.  Saxon's letter is attached as Exhibit 4.

19     Even though the executed trust deed and the promissory note was between Ruthie

20  Hillery and New Century Mortgage only, MERS nor TD Service Company nor Everhome, nor

21  Consumer Solutions REO, LLC cited any authority for MERS to institute a foreclosure action

22  against Ms. Hillery.  At no time was an assignment from New Century to MERS recorded, nor

23  was the chain of title from New Century to MERS ever established.  There is no record of the

24  assignment of the trust deed.  There is no record of the assignment of the promissory note.

25     During the month of May through September 2008, Ruthie Hillery sent a letters

26  pursuant to Truth in Lending, RESPA, Fair Debt Collection, and California Legal Remedies Act

27

28

[24] California Civil Code §2924c(b)(1).

to Saxon, TD Title Company, MERS, Quality Loan Service Corporation, the parties then known to Ruthie Hillery as having some connection this instant matter.  This letter was also sent to Everhome.  These letters are attached as Exhibit 5.  None of the recipients responded to her demands.  Saxon, through its attorney, responded with a letter on September 12, 2008 on behalf of Saxon.  In its letter, Saxon stated that Ruthie Hillery's obligation was due.  Saxon declined to address any of the other issues raised in the letter, to include furnishing the name of the current beneficiary or justification for the debt under RESPA or Fair Debt Collection.  It also declined to justify the $49,743.40 demanded in the Notice of Default or comply with California Civil Code §2943.  It declined to present any evidence of proper assignment of the note and trust deed, nor establish proper chain of the trust deed or note.  Saxon's letter is attached as Exhibit 6 to this Motion.

On September 17, 2008, Saxon Mortgage and Consumer Solutions REO filed this instant lawsuit and based jurisdiction on a federal question.

Amazingly, and prior to the initiation of litigation, Saxon transferred its servicing rights to Everhome Mortgage Company the day before, on September 16, 2008.  Saxon's letter of notification to Ruthie Hillery of September 16, 2008 is attached as Exhibit 7 to this Motion.  In other words, the day before prior to filing the complaint in this matter, Saxon assigned/transferred what ever right it had to sue Ms. Hillery to Everhome.  Saxon stripped itself of standing, assuming that it had any, the day before suing Ruthie Hillery.

Ten days later, Saxon and Consumer Solutions purported to serve Ruthie Hillery.  Ruthie Hillery was never served.  What happened was that some legal documents were dropped on the front doorstep of 2119 Goff Avenue, Pittsburg, CA  94565 while Mrs. Hillery was in the hospital.  They were retrieved by Ms. Hillery's grandson when he came back from school.

The papers have never been properly served upon Thomas Spielbauer nor the Spielbauer Law Firm.

//

//

1

2

**NEITHER PLAINTIFF HAS STANDING;**
**NEITHER PLAINTIFF IS THE REAL PARTY IN INTEREST**

3      Assuming jurisdiction, which will be discussed infra, Saxon Mortgage Services, Inc.

4   (SAXON) and Consumer Solutions REO, LLC (CONSUMER) nonetheless lack standing to

5   bring this action. They are simply not the right parties to bring this action, this request for

6   declaratory judgment, and this judicial foreclosure. The proper parties are not before this Court.

7   *In re Foreclosure Cases*[25] is directly on point. This case is a carbon copy of the defects

8   existent in those matters.

9      Real party in interest objections are sometimes treated as challenges to the court's

10  subject matter jurisdiction. These objections question the plaintiffs as to who is the real party in

11  interest and goes to the capacity of the named plaintiff to bring the action.[26]

12     In this matter, we do not know who the real party in interest is. We do not know who

13  the real beneficiary is. The facts reflect that the mortgage loan and trust deed were executed on

14  behalf of New Century Mortgage on August 18, 2006. New Century acknowledges this status

15  even as late as March 21, 2007, seven months later.

16     Then, on or about May 9, 2008, MERS, acting as nominee for CONSUMER, filed a

17  notice of default. This is the first that one learns of the appearance of MERS or CONSUMER.

18  There are no documents assigning the loan from New Century Mortgage to either MERS nor to

19  CONSUMER.

20     Confounding and confusing this situation even more, MERS then purports to assign

21  whatever interest it has to CONSUMER a month later, on June 9, 2008. See Exhibit D of

22  plaintiffs' complaint. Plaintiffs, however, allege in paragraph 17 of their complaint that it really

23  was New Century Mortgage which assigned its interest to CONSUMER, and that this occurred

24  on July 21, 2008 (rather than June 2008), and for the first time. All of this contradicts MERS

25

26     _____

       [25] *In re Foreclosure Cases* (S.D. Ohio 2007) 521 F. Supp. 2d 650.

27     [26] See 13 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and*
28  *Procedure* §3531 (noting cases that address distinction between constitutional standing and real
    party in interest in context of federal jurisdiction).

9

1  statement of May 9, 2008 that it was acting as nominee for CONSUMER.  This is indeed a

2  circular firing squad.  There is no documentation, of course, emanating from New Century

3  Mortgage.  None.  No one got authority from New Century.  MERS, CONSUMER and SAXON

4  simply created it ant then conferred it upon themselves.

5          What is generally referred to as the "mortgage" is composed of the (1) borrower's

6  obligation to pay the debt in the form of a promissory note, and (2) the security interest in the

7  borrower's property as evidenced by the mortgage or deed of trust. The transfer of the mortgage

8  is a transfer of the security interest in land, which is generally governed by the law of

9  conveyances and the real property recording system.  The transfer of the promissory note, on

10 the other hand, is governed by the law of contracts.[27]  **The debt is the principal obligation; the**

11 **mortgage only secures payment of the debt and cannot be transferred independently.**

12 **Without an interest in the debt, as evidenced by a properly assigned note, the lender does**

13 **not have the authority to foreclose under the trust deed.**[28]

14          The plaintiff must have a legal or equitable right, title or interest in the a foreclosure

15 action.  Of course, the current holder of the note and mortgage is always a party in interest in a

16 foreclosure proceeding.  A party's standing to foreclose, and a party's right to invoke the

17 jurisdiction of the court, typically becomes an issue when the foreclosing entity was not

18 properly assigned the note and mortgage, when the foreclosing entity is unable to establish an

19 unbroken chain of transfers from prior note holders, or when the true holder of the loan is in

20

21

22

23

24      [27] *Foreclosures*, National Consumer Law Center, Rao, Williamson and Twomey, 2008

25 Supplement, page 20, Section 4.3.4.1.2.

26      [28] See *In re Leisure Time Sports, Inc.* (B.A.P. 9th Circuit) 194 B.R. 859 (Applying

27 California law and concluding that assignment of mortgage without assignment of debt which it
   secured was not valid);  *Federal Deposit Insurance Corporation v. Houde* (1st Circuit 1996) 90

28 F.3d 600 (Applying Maine law and concluding that possession alone of note is not sufficient to
   confer standing if plaintiff is not holder under UCC and fails to prove proper transfer of note).

1   doubt.[29]

2       Questions about who is the real party in interest go to the capacity of the named plaintiff

3   to bring the action.[30]

4       There is a clear break in the chain of the trust deed and the promissory note from New

5   Century to the next beneficiary in line, whomever that is.

6       This is a carbon copy of *In re Foreclosure Cases*, mentioned above.

7       Three U.S. District Court judges in Ohio attracted attention in late 2007 when they, *sua*

8   *sponte*, dismissed more than sixty foreclosure actions on standing grounds.[31]  These rulings

9   were prompted by a sudden surge in foreclosure actions filed in these federal courts based on

10  assertions of diversity jurisdiction.[32]  The Court reacted by closely examining the plaintiffs'

11  standing to invoke the jurisdiction of the federal courts.

12      In the initial decision, Judge Boyko of the Northern District of Ohio simultaneously

13  dismissed fourteen foreclosure cases in which the plaintiffs failed to establish their standing as

14  of the time they filed their actions.[33]  Each complaint averred that the plaintiff was the owner of

15  the note and mortgage.  However, the supporting documents provided with the initial filings

16  were invariably either the original loan documents or other documents that made no mention of

17  any subsequent assignments to the named plaintiffs.

18      When notified of the need to document standing, counsel for the plaintiffs offered their

19  _____

20      [29] See *Harmony Homes v. United State ex rel. Small Business Administration* (M.D.
21  Florida 1996) 936 F. Supp. 907 (Lender who assigned away interest in property was not the
    proper party to file suit to foreclose a mortgage, aff'd without opinion, (11th Circuit 1997) 127
22  F.3d 1299.

23      [30] See 13 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and
    Procedure* §3531 (noting cases that address distinction between constitutional standing and real
24  party in interest in context of federal jurisdiction).

25      [31] *In re Foreclosure Cases* (S.D. Ohio 2007) 521 F. Supp. 2d 650; *In re Foreclosure
26  Cases* (N.D. Ohio October 31, 2007) 2007 WL 3232430; *In re Foreclosure Actions* (N.D. Ohio
    November 14, 2007) 2007 WL 43034554.

27      [32] *In re Foreclosure Cases* (S.D. Ohio 2007) 521 F. Supp. 2d 650, 652.

28      [33] *In re Foreclosure Cases* (N.D. Ohio October 31, 2007) 2007 WL 3232430.

1   own conclusory affidavits.  These affidavits purported to show an intent to assign the

2   obligations to the named plaintiffs at some point in the future.  The court rejected these belated

3   and vague attempts to establish standing retroactively.  The court emphasized that Article III

4   standing requirements for federal jurisdiction could not be waived by the court or the parties.[34]

5       Shortly thereafter, another judge for the Northern District of Ohio *sua sponte* dismissed

6   thirty-two foreclosure actions with a single order.[35]  Here again, the court emphasized the

7   absolute necessity for a plaintiff who was not identified in the note and mortgage at issue to

8   attach to its complaint documentation demonstrating that it was the owner of the obligation.

9   The court stated:

10           To the extent a note and mortgage are no longer held or
             owned by the originating lender, a plaintiff must appropriately
11           document the chain of ownership to demonstrate its legal status
             vis-a-vis the items at the time it files suit on this items.
12           Appropriate "documentation" includes, but is not limited to, trust
             and/or assignment documents executed before the action was
13           commenced, or both as circumstances may require.[36]

14       The *In re Foreclosure Cases* Court clearly articulated the need for the plaintiffs to

15   establish standing, and at the time of the filing of their litigation.  Plaintiffs have not done this.

16   While the quote is lengthy, it is important as it demonstrates the reasoning of this critical Article

17   III requirement.  The Court wrote:

18                           Standing
             Federal courts have only the power authorized by Article III
19           of the United States Constitution and the statutes enacted by
             Congress pursuant thereto. [Citation.] As a result, a plaintiff must
20           have constitutional standing in order for a federal court to have
             jurisdiction. Id.
21               Plaintiffs have the burden of establishing standing.
             [Citation]. If they cannot do so, their claims must be dismissed for
22           lack of subject matter jurisdiction. [Citation].
                 Because standing involves the federal court's subject matter
23           jurisdiction, it can be raised sua sponte. [Citation.]. Further,
             standing is determined as of the time the complaint is filed.
24           [Citation.] Finally, while a determination of standing is generally
             based upon allegations in the complaint, when standing is

25

26   ─────────────
     [34] *In re Foreclosure Cases* (N.D. Ohio October 31, 2007) 2007 WL 3232430.
27
     [35] *In re Foreclosure Actions* (N.D. Ohio November 14, 2007) 2007 WL 43034554.
28
     [36] *In re Foreclosure Actions* (N.D. Ohio November 14, 2007) 2007 WL 43034554 at 1.

                                        12

questioned, courts may consider evidence thereof. [Citation.]

 To satisfy Article III's standing requirements, a plaintiff must show: (1) it has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. [Citation.]

 To show standing, then, in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed. The foreclosure plaintiff must also show, at the time the foreclosure action is filed, that the holder of the note and mortgage is harmed, usually by not having received payments on the note.

 In addition to standing, a court may address the issue of subject matter jurisdiction at any time, with or without the issue being raised by a party to the action. [Citation.] Further, as with standing, the plaintiff must show that the federal court has subject matter jurisdiction over the foreclosure action at the time the foreclosure action was filed. [Citation.] Also as with standing, a federal court is required to assure itself that it has subject matter jurisdiction and the burden is on the plaintiff to show that subject matter jurisdiction existed at the time the complaint was filed. [Citation.]  Finally, if subject matter jurisdiction is questioned by the court, the plaintiff cannot rely solely upon the allegations in the complaint and must bring forward relevant, adequate proof that establishes subject matter jurisdiction. [Citation.][37]

It is incumbent upon SAXON and CONSUMER to establish the chain of both the promissory note and of the trust deed from this Hillery/New Century August 18, 2006 loan transaction.  This chain is not established.  This case must therefore be dismissed.

### SAXON'S TERMINATION OF STANDING

Even if SAXON can somehow get around the above argument, it eliminated any standing that it could arguably enjoy the day before this lawsuit was filed.  On September 16, 2008, SAXON assigned whatever rights it had (servicing rights) to Everhome.  SAXON'S notice is assignment is attached as Exhibit 7 to this motion.  After it relinquished its rights, it filed this litigation in its name the following day.  Either SAXON did this maliciously, or more likely,  SAXON's right hand does not know what its left hand is doing, and vica-versa.  This lack of cognition emphasizes all the more the need for the real parties in interest to appear in

---

[37] *In re Foreclosure Cases* (S.D. Ohio 2007) 521 F. Supp. 2d 650, 653.

this matter.  Otherwise, Ruthie Hillery will be subjected to multiple litigation by various parties seeking to take her home from her, based on this New Century Mortgage loan.

### MERS

In order to fully comprehend the gross defects in the chain of the promissory note and trust deed, one must understand the role of MERS.

MERS is a corporation that administers an electronic registry (the Mortgage Electronic Registration System) which tracks ownership interests and servicing rights in mortgages for its members, who are mortgage lenders, servicers, investors, and other members of the mortgage lending industry.

MERS serves as mortgagee or beneficiary solely in the capacity as "nominee" for the lender and the lender's successors and assigns.  MERS as nominee for the lender has been approved by Fannie Mae, Freddie Mac, Ginnie Mae, FHA and the VA.[38]  MERS does not play an active role in identifying or recording transfers of mortgage interests.[39]  MERS does not provide consumers with access to information about a true owner of the mortgage.  Rather, consumers consulting MERS' toll-free telephone number or utilizing its public website will only learn of the name of their mortgage servicer.[40]

---

[38] *Process Loans, Not Paperwork*, MERS brochure, available at www.mersince.org/newsroom/brochures.asp.

[39] *Process Loans, Not Paperwork*, MERS brochure, available at www.mersince.org/newsroom/brochures.asp.

[40] *Foreclosures*, National Consumer Law Center, Rao, Williamson and Twomey, 2008 Supplement, page 31, Section 4.3.4A.1

14

**MERS has no legal or beneficial interest in the promissory note.**[41]  While MERS may be specifically designated as mortgagee or beneficiary in the mortgage or deed of trust as nominee for the lender (which it was not in this matter), the accompanying promissory note refers only to the lender and generally does not identify MERS or grant MERS any interest whatsoever in the mortgage debt.  In most cases, MERS does not become holder of the promissory note which accompany mortgages for which it serves as mortgagee.[42]  In those cases in which MERS does take possession of the note, often endorsed in blank, it continues to disclaim any beneficial interest.[43]

The commonly accepted meaning of nominee is one who acts in a representative or nominal capacity only and who does not acquire any property or ownership rights.[44]  In an action involving MERS, the Seventh Circuit noted that because MERS acts in furtherance of its principal's interests and not its own, its role is distinct from that of a trustee, and described MERS' status as follows: "It is a nominee only, holding title to the mortgage but not the note. Each lender appears to be entitled not only to payment as the note's equitable (and legal) owner

---

[41] See *MERS Recommended Foreclosure Procedures*, generally, available at www.mersinc.org/Foreclosures/index.aspx; *Mortgage Electronic Registration System, Inc. v. Nebraska Department of Banking and Finance* (Nebraska 2005) 704 N.W.2d 784, 786-787 (MERS "only hold legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members" and that "MERS merely tracks the ownership of the lien" for its members).  See also *Fannie Mae Single Family Servicing Guide*, Part IV, Chapter 1, § 103. According to Fannie Mae Guidelines, all actions that MERS takes with respect to a mortgage will be based on the instructions initiated by the originating lender, Fannie Mae, or the mortgage servicer.

[42] See *Gemini Servs., Inc. v. Mortgage Electronic Registration System, Inc. (In re Gemini)* (Bankr. S. D. Ohio 2006) 350 BR 74 (although MERS held legal title to the mortgage, it could not hold beneficial interest because it did not hold note).

[43] See *MERS Recommended Foreclosure Procedures*, generally available at www.mersinc.org/Foreclosures/index.aspx.

[44] *Black's Law Dictionary* defines "nominee" as one designated to act for another as his representative in a rather limited sense.  *Black's Law Dictionary* 727 (6th Edition 1991).

1  but also to control any litigation and settlement.[45]

2  **FEDERAL RULES OF CIVIL PROCEDURE 12(B)(7) AND 19**

3  These standing defects give rise to Ruthie Hillery's, and the Spielbauer Law Firm's,

4  obligation to request that this Court dismiss this matter pursuant to Federal Rule of Civil

5  Procedure 12(b)(7) and Federal Rule of Civil Procedure 19.

6  Federal Rule of Civil Procedure 19, requires that an additional person be joined as a

7  party in an action if, "in the person's absence complete relief cannot be accorded among those

8  already parties." The failure to join a person needed for a just adjudication may be raised by by

9  motion.[46] The court should dismiss a suit for failure to join an indispensable, absent party when

10  that party (1) is necessary to the suit, (2) cannot be joined, and (3) is indispensable to the

11  resolution of the suit.[47]

12  In this case, the current beneficiary established by the chain of both the trust deed and

13  promissory note is a necessary party to the suit because complete relief is not possible among

14  the existing parties.[48] The current beneficiary of the August 18, 2006 New Century Mortgage,

15  as established by the chain of the promissory note and trust deed, is necessary to the complete

16  resolution of the litigation initiated by plaintiffs. To proceed without the absent party would

17  leave Ruthie Hillery subject to a substantial risk of incurring multiple or inconsistent

18  obligations by reason of the claimed interest. Parties can generally be involuntarily joined as

19  defendants but not involuntarily joined as plaintiffs.

20  The prejudice to Ruthie Hillery cannot be lessened or avoided by the insertion of

21  protective provisions in the judgment, the shaping of relief, or any other measure available to

22
23  [45] *Mortgage Electronic Registration System v. Estrella* (7th Circuit 2004) 390 F.3d 522.

24  [46] Federal Rule of Civil Procedure 12(b)(7); 7 Charles A. Wright, Arthur R. Miller, Mary
25  K. Kane, Federal Practice & Procedure §1609.

26  [47] Federal Rule of Civil Procedure 19(a), (b); *Pit River Home & Agricultural Cooperative Association v. U.S.* (9th Cir. 1994) 30 F.3d 1088, 1099.

27  [48] Federal Rule of Civil Procedure 19(a)(1); *Dawavendewa v. Salt River Project*
28  *Agricultural Improvement & Power District* (9th Cir. 2002) 276 F.3d 1150, 1155; *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.* (3d Cir. 1993) 11 F.3d 399, 405.

1  the court.  This is particularly true when the current plaintiffs in reality do not even have

2  standing.[49]  As a result, any judgment rendered without the current legally established

3  beneficiary will be inadequate.[50]

4       If the court dismisses the suit for nonjoinder, plaintiffs will still have an adequate

5  remedy.[51]  They can pursue their matters in state court as a foreclosure action, which this matter

6  really is and where the matter really belongs.  They can do this after establishing the chain of

7  the note and trust deed (if they can). Beyond this, however, Ruthie Hillery will be protected

8  from a foreclosure of her home until the proper beneficiary is established, a requirement under

9  California foreclosure law.

10       Because plaintiff did not properly join an indispensable party, the court should dismiss

11  the suit.

12                    **FAILURE TO STATE A CLAIM**
                **UPON WHICH RELIEF CAN BE GRANTED**
13                        Rule 12(b)(6)

14       Federal Rule of Civil Procedure 12(b)(6) calls for dismissal when the plaintiff fails to

15  state a claim upon which relief can be granted.  The gravamen of plaintiffs' complaint is

16  authorization to foreclose on the home of Ruthie Hillery.  It first seeks a declaratory judgment

17  that the rescission tendered to New Century Mortgage on August 21, 2006, and acknowledged

18  by plaintiffs as having occurred in paragraph 16 of its complaint, really did not rescind the

19  transaction but only partially rescinded it, entitling SAXON and CONSUMER to the money

20  allegedly lent by the bankrupt and non-existent New Century Mortgage.  They then ask for the

21

22       [49] Federal rule of Civil Procedure 19(b); *Glancy v. Taubman Centers, Inc.* (6th Cir. 2004)
23  373 F.3d 656, 672;  *Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274, 1287;
    *Pit River Home & Agricultural Cooperative Association v. U.S.* (9th Cir. 1994) 30 F.3d 1088,
24  1101.

25       [50] Federal rule of Civil Procedure 19(b); *Glancy*, 373 F.3d at 672; *Schlumberger*, 36 F.3d
26  at 1287; *Pit River Home & Agricultural Cooperative Association v. U.S.* (9th Cir. 1994) 30 F.3d
    1088, 1101.

27       [51] Federal Rule of Civil Procedure 19(b); *Glancy*, 373 F.3d at 672; *Schlumberger*, 36 F.3d
28  at 1287; *Pit River Home & Agricultural Cooperative Association v. U.S.* (9th Cir. 1994) 30 F.3d
    1088, 1101-02.

1    right to foreclose upon the home of Ruthie Hillery and ask for a deficiency judgment against

2    Ms. Hillery, the setting aside of a junior deed of trust by the Spielbauer Law Firm.

3        The complaint filed by the plaintiffs is confusing and duplicative.  This is indicative of

4    the ownership interests the plaintiffs claim to have.  The complaint contains two separate sets of

5    six causes of action, for a total of twelve causes of action.  Each of the sets appear to be copies

6    of each other.  Beyond this, the plaintiffs make the incorrect allegation in paragraph 16 of the

7    complaint that Ruthie Hillery tendered a rescission to the plaintiffs on August 21, 2006.  Ruthie

8    Hillery tendered the rescission to <u>New Century Mortgage</u> on August 21, 2008.

9        The plaintiffs further make the incorrect statement in Paragraph 17 of their complaint

10   that New Century Mortgage assigned the note to CONSUMER.  This, of course, is not what the

11   assignment states. The assignment, Exhibit D of plaintiffs' complaint (and attached as Exhibit 8

12   to this motion), states the assignment came from MERS.  No chain is established to explain how

13   it got to MERS.  This claim of assignment to CONSUMER is contradicted by the notice of

14   default which MERS caused to be recorded on May 9, 2008 in which it stated that it was the

15   nominee of CONSUMER.  See exhibit 3.

16       Given the gross defects in the chain of the promissory note and trust deed, as discussed

17   supra, and the mess of the complaint, there is no clear statement of a claim upon which any

18   relief can be granted.

19       The court has authority to dismiss a suit for failure to state a claim upon which relief can

20   be granted if the complaint clearly demonstrates that plaintiff cannot prove any set of facts that

21   would entitle it to relief.[52]

22       Since plaintiffs did not state a claim upon which relief can be granted, the court should

23   dismiss the suit.

## NO FEDERAL QUESTION

25       Plaintiffs claim jurisdiction based on federal question.  They cite to 28 U.S.C §1331,

26   which states, "The district courts shall have original jurisdiction of all civil actions arising under

27

28

[52] *Hishon v. King & Spalding* (1984) 467 U.S. 69, 73.

the Constitution, laws, or treaties of the United States."

Federal courts are presumptively without jurisdiction over civil actions and the burden of establishing the contrary rests upon the party asserting jurisdiction.[53] Federal judicial power derives from Article III, § 2 of the Constitution. "This section delineates the absolute limits on the federal courts' jurisdiction."[54] Federal courts must normally determine issues of subject matter jurisdiction before considering a case on its merits.[55] Federal subject matter jurisdiction must exist at the time the action is commenced. Otherwise, the court has no power but to dismiss the action.[56] The existence of federal jurisdiction must be disclosed in the first complaint filed rather than some later amendment. "A district court is powerless to grant leave to amend when it lacks jurisdiction over the original complaint."[57]

A federal claim is "insubstantial" if it cannot serve as the basis for "federal question" jurisdiction. This occurs when the federal issues presented are too insubstantial to be considered by the federal district court.[58] A federal claim is not "colorable" if it "clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction ...."[59] There is no federal question jurisdiction in a quiet title or ejectment action, even if one of the

---

[53] *Kokkonen v. Guardian Life Ins. Co. of America* (1994) 511 U.S. 375,  377.

[54] *Ankenbrandt v. Richards* (1992) 504 US 689, 695–697, 112 S.Ct. 2206, 2211.

[55] *Steel Company v. Citizens for a Better Environment* (1998) 523 US 83, 94, 118 S.Ct. 1003, 1012; *Northeast Erectors Association v. Secretary of Labor* (1st Circuit 1995) 62 F3d 37, 39.

[56] *Morongo Band of Mission Indians v. California State Board of Equalization* (9th Cir. 1988) 858 F2d 1376, 1380.

[57] *Morongo Band of Mission Indians v. California State Board of Equalization*, (9th Cir. 1988) 858 F2d 1376, 1381, fn. 2.

[58] *Hagans v. Lavine* (1974) 415 US 528, 537–538; *Cook v. Peter Kiewit Sons Co.* (9th Cir. 1985) 775 F2d 1030, 1035.

[59] See *Bell v. Hood* (1946) 327 US 678, 682–683; *Musson Theatrical, Inc. v. Federal Express Corp.* (6th Cir. 1996) 89 F3d 1244, 1248.

1   parties derived title under federal law (e.g., under a U.S. land patent).[60]

2   The ticket into federal court which CONSUMER and SAXON seek to create and use is

3   the superfluous letter of rescission which Ruthie Hillery sent to SAXON on May 24, 2008

4   which cited to the Federal Truth in Lending statutes.  This ticket is insubstantial by any

5   definition.

6   The fact of the matter is that this May 24th letter confers no standing in regards to a

7   federal question until there is some established right or obligation involving CONSUMER or

8   SAXON under Truth in Lending to rescind.  At issue is a rescission which Ruthie Hillery

9   extended to New Century Mortgage on August 21, 2006.  The party to raise this issue is New

10  Century.  Compounding the issue is the fact that no action has been undertaken concerning this

11  August 21, 2006 rescission until two years later when CONSUMER and SAXON essentially

12  sought to confer upon themselves the authority to bring an action on behalf of New Century.

13  The Truth in Lending Act one year statute of limitations for money damages under the 15

14  U.S.C. §1640 has long expired.

15  This case in reality is not a case involving a federal question.  It is a foreclosure matter

16  and belongs in state court.  All of this case is controlled by California State foreclosure law.   It

17  appears that someone, albeit SAXON or MERS or CONSUMER, initially pursued California

18  non-judicial foreclosure on Ruthie Hillery's home by filing a notice of default on May 9, 2008.

19  They then had  a change of heart, filing a complaint for judicial foreclosure in federal court

20  instead.

21  Under California Civil Code §2924 et seq., a lender must properly serve and record a

22  notice of default setting forth the borrower's breach in order to effect a foreclosure.  After 90

23  days, three months, have elapsed, the lender must thereafter properly serve and record the

24  Notice of Trustee Sale at least 20 days prior to the actual sale.  Assuming proper compliance

25  with the law, the property is then auctioned to the highest bidder at the foreclosure sale.

26

27  _____

28  [60] *Shulthis v. McDougal* (1912) 225 US 561, 569–579, 32 S.Ct. 704, 706–707; *Virgin v. County of San Luis Obispo* (9th Cir. 2000) 201 F3d 1141, 1143; *Marshall v. Desert Properties Co.* (9th Cir. 1939) 103 F2d 551, 552.

The harshness of non-judicial foreclosure has been recognized.  "The exercise of the power of sale is a harsh method of foreclosing the rights of the grantor."[61]   The statutory requirements are intended to protect the trustor from a wrongful or unfair loss of the property[62], and a valid foreclosure by the private power of sale requires ***strict compliance*** with the requirements of the statute.[63]   It has been a cornerstone of foreclosure law that the statutory requirements, intending to protect the trustor from a wrongful or unfair loss of the property, must be complied with strictly.[64]  Close does not count.

California law requires that the notice of default must include the name, mailing address, and telephone number of the beneficiary.[65]  This is a big problem for the plaintiffs. The notice of default filed on May 9, 2008 by MERS does not contain this information. The notice of default is defective, and therefore void.  Where there is an error in the recorded notice of default, the beneficiary or trustee must record another notice.[66]   A defective notice of default

---

[61]*Anderson v.  Heart Federal Savings* (1989) 208 Cal.App.3d 202, 215, citing to *System Inv.  Corporation v.  Union Bank* (1971) 21 Cal.App.3d 137, 153.

[62] *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; accord, *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 503; *Lo Nguyen v. Calhoun* (6th District 2003) 105 Cal.App.4th 428, 440.

[63] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.179; *Anderson v. Heart Federal Sav. & Loan Assn.*, 208 Cal. App. 3d 202, 211  (3d Dist. 1989), reh'g denied and opinion modified, (Mar. 28, 1989); *Miller v. Cote* (4th Dist. 1982) 127 Cal. App. 3d 888, 894; *System Inv. Corp. v. Union Bank* (2d Dist. 1971) 21 Cal. App. 3d 137, 152-153; *Bisno v. Sax* (2d Dist. 1959) 175 Cal. App. 2d 714, 720.

[64] Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 §10.182.

[65] California Civil Code §2924c(b)(1).

[66] See *Hunt v. Smyth* (1st Dist. 1972) 25 Cal. App. 3d 807, 823.

1    would void any resulting sale.[67]

2        Plaintiffs may argue that this is not a problem in a judicial foreclosure action.  That

3    response, of course, simply emphasizes the true nature of this action, and that is that this a

4    foreclosure case.  Nothing more.  Both judicial and non-judicial foreclosure matters are best

5    handled in California State Courts where California State Law applies.

6        Defendants pray that this court find that this is no substantial federal question granting it

7    jurisdiction in this matter and dismiss this case with prejudice for that reason.

8                         **FAILURE TO PROPERLY SERVE**

9        Federal Rule of Civil Procedure 12(b)(5) authorizes the bringing of a motion to dismiss

10   when there has been insufficient service of process.  When service of process is insufficient, the

11   court may dismiss the suit or quash the service.[68]

12       In this case, the court should dismiss this suit.  Indeed, the perjury  reflective in the

13   service of process claim is offensive.  Dismissal, even without prejudice, is a proper remedy

14   given the perjury involved. The declaration of Ruthie B. Hillery establishes that she was in the

15   hospital at the time the alleged service of process occurred.  The service of process filed in this

16   matter claims that it occurred on September 26, 2008.  At the very time that Ms. Hillery was

17   allegedly and personally served at her home, Ms. Hillery was not at her home of 2119 Goff

18   Avenue in Pittsburg, California where the affiant says she was.  She was at the John Muir

19   Medical Center in Concord.  Ms. Hillery returned home that Friday evening  to learn that

20   someone had dropped the complaint on her front doorstep, a complaint which was retrieved by

21   her grandson from the front door at the time that she was hospitalized.

22       The declaration of Thomas Spielbauer establishes that he was never served with a copy

23   _____

24       [67] *Anderson v. Heart Federal Saving & Loan Association* (3d Dist. 1989) 208 Cal. App.
     3d 202, 211; *Bank of America National Trust & Savings Association v. Reidy* (1940) 15 Cal. 2d

25   243, 248; *Whitman v. Transtate Title Co.* (4th Dist. 1985) 165 Cal. App. 3d 312, 322-323; *In re
     Worcester* (9th Cir. 1987) 811 F.2d 1224, 1228; *Smith v. Williams* (1961) 55 Cal. 2d 617, 621;

26   *Stirton v. Pastor* (4th Dist. 1960) 177 Cal. App. 2d 232, 234; *Brown v. Busch* (3d Dist. 1957) 152
     Cal. App. 2d 200, 203-204; *Dimock v. Emerald Properties LLC* (4th Dist. 2000) 81 Cal. App. 4th

27   868.

28       [68] See *Adams v. Allied Signal Gen. Aviation Avionics* (8th Cir. 1996) 74 F.3d 882, 886.

                                    22

of the complaint.   Plaintiffs and their counsel never even bothered to mail, fax, a copy of the

complaint to counsel.

Defendants ask that this court dismiss this matter for plaintiffs' failure to properly serve,

and their agent's willingness to commit perjury in the process.

## PRAYER

For the reasons set forth in this motion, defendants Ruthie B. Hillery and Thomas

Spielbauer request that this Court dismiss plaintiffs' complaint in this matter with prejudice.

Respectfully Submitted
THE SPIELBAUER LAW FIRM


by Thomas Spielbauer, Esq.
Attorney for Defendant Ruthie B. Hillery
and for the Spielbauer Law Firm

23