UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAXON MORTGAGE SERVICES, INC., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>RUTHIE B. HILLERY, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-08-4357 EMC<br><br>**ORDER DENYING DEFENDANTS' LIMITED MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>**(Docket Nos. 56, 65)** |

In the instant lawsuit, Plaintiff Consumer Solutions REO, LLC seeks to foreclose on certain real property owned by Defendant Ruthie B. Hillery. In various papers that they have filed, Ms. Hillery and her counsel (collectively, "Defendants") have challenged Consumer Solutions' standing to bring this action. In essence, Defendants have argued that there is insufficient evidence that Consumer Solutions has standing because there is insufficient evidence showing that Consumer Solutions owns both the promissory note and deed of trust for the real property at issue in this case. In its case management order of April 9, 2009, the Court bifurcated proceedings in this case, setting up the issue of chain of title for summary judgment. *See* Docket No. 36 (order) ("The issue of the adequacy of the chain of title of the note and deed of trust shall be bifurcated. The parties shall conduct focused expedited discovery and set this matter for adjudication by motion for summary judgment."). Now pending before the Court is Defendants' motion for summary judgment.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **DENIES** Defendants' motion.

## I. MOTION TO STRIKE

As a preliminary matter, the Court should note that Defendants have moved to strike the declaration of Jody Gunderson, which was submitted by Consumer Solutions in support of its opposition brief. *See* Docket No. 65 (motion).

Defendants object to the declaration on the basis that Mr. Gunderson lacks personal knowledge. This objection is overruled. Mr. Gunderson testifies that the information in his declaration is based, at least in part, on his personal knowledge. *See* Docket No. 61 (Gunderson Decl. ¶ 1). While Mr. Gunderson also provides testimony based on his review of Consumer Solutions' records, that is permitted by the Federal Rules of Evidence. More specifically, Rule 803(6), which covers the business records exception to the hearsay rule, allows for testimony about a business record by either the custodian of records *or* a qualified witness. The Weinstein treatise explains that what is needed is someone "who can explain the record-keeping of the organization." 5-803 Weinstein's Fed. Evid. § 803.08[8][a]. The treatise also notes that

> [t]he phrase "other qualified witness" is given a very broad interpretation. The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business. The witness need not have personal knowledge of the actual creation of the documents or have personally assembled the records. In fact, the witness need not even be an employee of the record-keeping entity as long as the witness understands the entity's record-keeping system.

*Id.* In the instant case, Mr. Gunderson has shown that he has a sufficient understanding of Consumer Solutions' record-keeping system. *See* Docket No. 61 (Gunderson Decl. ¶ 1) ("[A]s part of my duties [as Vice President and Chief Operating Officer], I have necessarily become familiar with and have personal knowledge of Consumer Solutions' business practices and procedures concerning the manner in which services are performed by Consumer Solutions. I also necessarily have access to Consumer Solutions' records in general and with respect to the [Hillery] loan in particular.").

Defendants also object to the Gunderson declaration – specifically paragraphs 6 and 7 – on the ground that it contains improper opinions. This objection is also overruled. The paragraphs do

not contain opinions. Alternatively, to the extent the paragraphs might contain opinions about what a document says, the Court can simply look at the document itself.

## II.   FACTUAL & PROCEDURAL BACKGROUND

The evidence submitted in conjunction with the motion for summary judgment reflects as follows.

A.   Promissory Note and Deed of Trust

On or about August 18, 2006, New Century Mortgage Corporation made a loan to Ms. Hillery in the amount of $336,000. *See* Docket No. 61 (Gunderson Decl., Ex. A) (adjustable rate balloon note). The promissory note was secured by a deed of trust on the real property at issue.[1] *See* Docket No. 61 (Gunderson Decl., Ex. A) (Promissory Note ¶ 11) ("In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument'), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note."); Docket No. 62 (Gunderson Decl., Ex. B) (Deed of Trust at 3) ("This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.").

The deed of trust explains that "[t]he beneficiary of this Security Instrument is MERS," but "solely as nominee for Lender and Lender's successors and assigns"; "MERS holds only legal title to the interests granted by Borrower in this Security Instrument." Docket No. 61 (Gunderson Decl., Ex. B) (Deed of Trust at 3). This explanation of MERS's role is consistent with the definition of the term "nominee" in Black's Law Dictionary. The dictionary defines the term as "[a] person designated to act in place of another, usu[ally] in a very limited way" or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1072 (7th ed.).

---

[1] The deed of trust was recorded on or about September 1, 2006. *See* Docket No. 61 (Gunderson Decl., Ex. B) (deed of trust).

In addition, a disclosure statement that Ms. Hillery signed (apparently on the same day that she signed the promissory note and deed of trust) provides a consistent explanation of the role of MERS:

> [MERS] is named on your Mortgage as the mortgagee in a nominee capacity for New Century. MERS is a company separate from your Lender that operates an electronic tracking system for Mortgage rights.
>
> MERS is not your lender; it is a company that provides alternative means of registering the Mortgage lien in the public records. MERS maintains a database of all the loans registered with it, including the name of the Lender on each loan. Your Lender has elected to name MERS as the mortgagee in a nominee capacity and record the mortgage in the public land records to protect its lien against your property.
>
> **Naming MERS as the mortgagee and registering the mortgage on the MERS electronic tracking system does not affect your obligation to the Lender, under the Promissory Note.**

Docket No. 61 (Gunderson Decl., Ex. D) (disclosure statement about MERS) (emphasis in original).

B.  <u>New Century Bankruptcy</u>

Approximately six months later, New Century filed for bankruptcy in the bankruptcy court for the District Court of Delaware (Case No. 07-10416 (KJC)). *See* Docket No. 31 (Pierson Decl. ¶ 5); Docket No. 32 (Gunderson Decl. ¶ 5).

On or about April 27, 2007, the bankruptcy court issued an order to which, among others, New Century and Morgan Stanley had stipulated. *See* Docket No. 61 (Gunderson Decl., Ex. E) (bankruptcy court stipulation and order) (hereinafter "BR Order"). The stipulated order explained that Morgan Stanley was a party to two different agreements involving New Century: (1) a Master Repurchase Agreement (and related Guaranty), dated December 12, 2005; and (2) a Loan Purchase Agreement, dated May 1, 2006. *See* Docket No. 61 (Gunderson Decl., Ex. E) (BR Order at 2).

The bankruptcy court order does not provide any real substantive detail about either agreement. However, it appears that the Master Repurchase Agreement was an agreement between New Century, certain buyers, and Morgan Stanley, with Morgan Stanley acting as the agent for the buyers, *see* Docket No. 61 (Gunderson Decl., Ex. E) (BR Order at 2), and that, under the agreement, the buyers bought mortgage loans from New Century, with New Century was obligated to

4

repurchase under certain conditions. *See* Docket No. 61 (Gunderson Decl., Ex. E) (Agreement for the Disposition of Certain Mortgage Loans and Residual Interests, art. I) (hereinafter "Disposition Agreement"). As for the Loan Repurchase Agreement, it was an agreement pursuant to which Morgan Stanley bought from New Century mortgage loans subject to an obligation, on the part of New Century, to repurchase any loan as to which the mortgagor was delinquent with respect to the loan's first monthly payment. *See* Docket No. 61 (Gunderson Decl., Ex. E) (BR Order at 2).

Under the bankruptcy court order, New Century and Morgan Stanley were allowed to enter into an Agreement for the Disposition of Certain Mortgage Loans and Residual Interests (*i.e.*, the Disposition Agreement). *See* Docket No. 61 (Gunderson Decl., Ex. E) (BR Order at 2). The mortgage loans were those loans sold to the buyers under the Master Repurchase Agreement which New Century was obligated to repurchase under that agreement. The residual interests were certain interests sold to the buyers under the Master Repurchase Agreement which New Century was obligated to repurchase under that agreement. *See* Docket No. 61 (Gunderson Decl., Ex. E) (Disposition Agreement, art. I). Under the Disposition Agreement, Morgan Stanley was to auction the mortgage loans and residuals, with the auction proceeds to be used to pay Morgan Stanley's estimated claim against New Century. *See* Docket No. 61 (Gunderson Decl., Ex. E) (Disposition Agreement at 2) (defining the "MS Estimated Claim" as the maximum amount asserted by Morgan Stanley under the Master Repurchase Agreement and the maximum amount of all obligations asserted by Morgan Stanley under the Loan Repurchase Agreement).

C.    Auction

Soon after the bankruptcy court issued, Consumer Solutions entered into a Mortgage Loan Purchase Agreement with Morgan Stanley. *See* Docket No. 61 (Gunderson Decl., Ex. F) (Mortgage Loan Purchase Agreement, dated 5/4/2007) (hereinafter "Purchase Agreement"). The agreement specified that certain mortgage loans were being auctioned off pursuant to the Disposition Agreement and that, if Consumer Solutions was the successful bidder, *see* Docket No. 61 (Gunderson Decl., Ex. F) (Purchase Agreement at 1), then Morgan Stanley would convey "all right, title and interest of [Morgan Stanley] in and to the Mortgage Loans." Docket No. 61 (Gunderson Decl., Ex. F) (Purchase Agreement § 2). The mortgage loans at issue were listed in a schedule

attached to the Purchase Agreement. *See* Docket No. 61 (Gunderson Decl., Ex. F) (Purchase Agreement § 1). Ms. Hillery's loan appears to be listed on the schedule. *See* Docket No. 61 (Gunderson Decl., Ex. F) (Disposition Agreement, Mortgage Loan Schedule) (referring to loan with identification number 1009612369, and with balance of $336,000, regarding property located in Pittsburg, California).[2] According to Consumer Solutions, it was the successful bidder on Ms. Hillery's loan. *See* Docket No. 61 (Gunderson Decl. ¶ 8) ("Morgan Stanley proceeded to sell a number of mortgage loans through an auction, and Consumer Solutions ended up being the highest bidder. . . . One of the mortgage loans and associated mortgages that Morgan Stanley conveyed to Consumer Solutions was New Century's loan to Hillery.").

The records of the company servicing the loan, Saxon Mortgage Services, Inc., reflect that Morgan Stanley transferred its right, title, and interest in the loan to Consumer Solutions on or about June 14, 2007. *See* Docket No. 31 (Pierson Decl. ¶ 7); *see also* Docket No. 32 (Gunderson Decl. ¶ 32). The promissory note itself, however, reflects an endorsement by New Century to Consumer Solutions (*i.e.*, not an endorsement by New Century to Morgan Stanley, and then another endorsement by Morgan Stanley to Consumer Solutions). Approximately a year later, on or about June 20, 2008, MERS, acting as the beneficiary under the New Century deed of trust, formally assigned the deed of trust to Consumer Solutions. *See* Docket No. 61 (Gunderson Decl. ¶ 9). That assignment was subsequently recorded in July 2008. *See* Docket No. 32 (Gunderson Decl. ¶ 9 & Ex. G) (assignment of deed of trust).

### III.  DISCUSSION

As a preliminary matter, the Court notes that – as asserted by Consumer Solutions – Defendants' motion for summary judgment makes arguments about the case on the merits[3] and

---

[2] Loan number 1009612369 appears to be the loan number for the loan that Ms. Hillery obtained from New Century. *See* Docket No. 7 (Exhibit 1 of Defendants' motion to dismiss, filed on 10/17/2008) (Ms. Hillery's signed notice of right to cancel, reflecting the same loan number).

[3] For example, Defendants argue that, when Ms. Hillery exercised her right to cancel the loan on August 22, 2006, the loan immediately became a nullity where therefore made the deed of trust a nullity – and consequently neither the promissory note nor the deed of trust could be transferred. *See* Mot. at 1.

One of the problems with this argument is that, contrary to what Defendants claim, *see* Reply

therefore goes beyond the limited scope that the Court permitted for early summary adjudication (*i.e.*, the issue of chain of title).

Regarding the issue of chain title, contrary to what Defendants argue, a reasonable juror could find that, based on the evidence above, both the promissory note and deed of trust were transferred to Consumer Solutions. As reflected in Part II, *supra*, there is evidence supporting a chain of title for the promissory note and evidence supporting a chain of title for the deed of trust.

Defendants' main argument in response is that, before the promissory note and deed of trust came into Consumer Solutions' possession, the two documents were divorced and that, upon this separation, the deed of trust could not exist on its own and therefore immediately became a nullity, leaving the promissory note an unsecured obligation. Defendants seem to contend that the documents were divorced in April 2007 when Morgan Stanley became the owner of the promissory note while MERS continued as the beneficiary of the deed of trust. *See* Mot. at 4, 11.

The problem with Defendants' position is that, even if the promissory note and deed of trust did become separated, there is no authority cited by Defendants to support its contention that the deed of trust becomes a nullity upon separation. For example, *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226 (1995), which Defendants cite in footnote 3 of their motion, states only as follows:

> A real property loan generally involves two documents, a promissory note and a security instrument. The security instrument secures the promissory note. This instrument "entitles the lender to reach some asset of the debtor if the note is not paid. In California, the security instrument is most commonly a deed of trust (with the debtor and creditor known as trustor and beneficiary and a neutral third party known as trustee). The security instrument may also be a mortgage (with mortgagor and mortgagee, as participants). In either case, the creditor is said to have a lien on the property given as security, which is also referred to as collateral."

---

at 4, Consumer Solutions's predecessor-in-interest, New Century, did not acknowledge her right to rescind on March 19, 2007. The letter from New Century simply states: "New Century Mortgage Corporation . . . is in *receipt* of your clients' request to rescind the above referenced loan. NCMC is prepared to *resolve* your clients' claim provided they accomplish the rescission by paying the amount listed below within 30 days and returning the enclosed Settlement Agreement and Release signed by all parties in its original form." Docket No. 7 (Ex. 2) (letter) (emphasis added). In other words, all that New Century said in the letter was that it had received her request to rescind and that it was prepared to settle the matter.

*Id.* at 1235. Here Consumer Solutions now holds both the note and deed of trust. Nothing in *Alliance Mortgage* suggests Consumer Solutions is now disabled from enforcing the real estate loan comprised of these two instruments. Defendants have not cited any authority that a divorced note and deed cannot be reunited and given full effect.

### IV.   CONCLUSION

Because there is evidence supporting a chain of title for both the promissory note and the deed of trust, and because Defendants have not cited any legal authority to support their "divorce" theory, Defendants' motion for summary judgment is denied.

This order disposes of Docket No. 56 and 65.

IT IS SO ORDERED.

Dated: August 3, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge

8