**United States District Court**
For the Northern District of California

1
2
3
4
5                  UNITED STATES DISTRICT COURT
6               NORTHERN DISTRICT OF CALIFORNIA
7

8   CONSUMER SOLUTIONS REO, LLC,          No. C-08-4357 EMC

9            Plaintiff,

10       v.                          **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S**

11   RUTHIE B. HILLERY, *et al.*,             **MOTION TO DISMISS DEFENDANTS' COUNTER-COMPLAINT; AND FINDING PLAINTIFFS' MOTION TO**

12           Defendants.                 **STRIKE MOOT**

13                                        **(Docket No. 52)**

14 _____/

15       Plaintiff Consumer Solutions REO, LLC ("Consumer Solutions") initiated this lawsuit

16 against Defendants Ruthie B. Hillery and the Spielbauer Law Firm, seeking, *inter alia*, a judicial

17 foreclosure and an equitable lien on certain real property owned by Ms. Hillery.  On May 27, 2009,

18 Ms. Hillery filed a counter-complaint against Consumer Solutions, Saxon Mortgage Services, Inc.,

19 and Mortgage Electronic Registration Systems, Inc. ("MERS").  Currently pending before the Court

20 is Consumer Solutions' motion to dismiss all nine claims asserted in the counter-complaint.[1]

21 Consumer Solutions has also moved to strike certain allegations in the counter-complaint pursuant to

22 Federal Rule of Civil Procedure 12(f).

23       Having considered the parties' briefs and accompanying submissions, as well as the oral

24 argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part the motion to dismiss.

25
26
_____

27 [1] As of date, only Consumer Solutions -- and not Saxon or MERS -- has been served with the counter-complaint.  The Court notes that, although this opinion addresses only the validity of the claims asserted

28 against Consumer Solutions, Ms. Hillery should bear in mind that much of the reasoning would be applicable to any claim asserted against either Saxon or MERS.

1   The Court finds the motion to strike moot in view of its conversion to and grant of the motion to dismiss.

2                        **I.    FACTUAL & PROCEDURAL BACKGROUND**

3          In her counter-complaint, Ms. Hillery alleges as follows.  Ms. Hillery, a senior citizen, is the

4   owner of certain real property located in Pittsburg, California.  *See* Counter-Compl. at 5.  Originally,

5   she had a loan with respect to this property with an entity by the name of World Savings.  In July or

6   August 2006, she was contacted by a company named United Vision Financial about refinancing her

7   home loan.  On or about August 18, 2006, Ms. Hillery entered into a new loan -- in the amount of

8   $336,000 -- with a company by the name of New Century Mortgage.  *See id.* at 5-6.  Ms. Hillery was

9   not given any loan documents prior to the signing date.  *See id.* at 5.  The new loan provided for an

10  adjustable rate mortgage, starting with an interest rate of 7.45% and having a maximum rate of

11  14.450%.  *See id.* at 6.

12         On August 21, 2006, Ms. Hillery gave notice to New Century that she was rescinding the

13  loan agreement.  Thereafter, she returned a cash-back check in the amount of $48,311.  *See id.*  New

14  Century did not respond.  Four months later, in December 2006, New Century sent Ms. Hillery a

15  letter stating that she had defaulted on the loan.  *See id.*  Ms. Hillery advised New Century that she

16  had rescinded the loan.  Several months later, on or about March 19, 2007, New Century sent a letter

17  to Ms. Hillery's then-attorney, stating that it had received the request to rescind and was prepared to

18  resolve the claim provided that Ms. Hillery pay over $315,000 and sign a settlement agreement and

19  release.  *See id.*; Docket No. 7 (Ex. 2) (letter, dated 3/19/2007).  Subsequently, on or about

20  September 28, 2007, Saxon, acting as the servicer of the Hillery loan, sent a similar letter in which it

21  stated that it had received the request to rescind and was prepared to resolve the claim provided that

22  Ms. Hillery pay a certain sum (*i.e.*, 266,379.31) and sign a settlement agreement and release.  *See*

23  Counter-Compl. at 7; Docket No. 20 (Ex. E) (letter, dated 9/28/2007).

24         The instant lawsuit was initiated approximately a year later.  Consumer Solutions filed the

25  suit, claiming that it obtained ownership of the New Century promissory note and deed of trust

26  through a bankruptcy court-sanctioned auction after New Century declared bankruptcy.  Prior to

27  filing suit, Consumer Solutions initiated foreclosure proceedings against Ms. Hillery by having a

28  notice of default recorded in May and June 2008.  *See* Counter-Compl. at 8-9.  Between May and

*United States District Court*
For the Northern District of California

1   September 2008, Ms. Hillery sent letters to Saxon, Everhome (a subsequent loan servicer), and

2   MERS disputing the debt, but to no avail.  *See id.* at 9.

## II.   MOTION TO DISMISS

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In the instant case, Consumer Solutions has challenged all of the claims asserted against it in the counter-complaint.  Those claims are as follows:  (1) violation of the Truth in Lending Act ("TILA"), (2) violation of the Home Ownership and Equity Protection Act ("HOEPA"), (3) violation of California Financial Code § 4973 (predatory lending), (4) quiet title, (5) violation of the Real Estate Settlement Procedures Act ("RESPA"), (5) violation of the Fair Debt Collections Practices Act ("FDCPA"), (6) violation of the California Consumer Legal Remedies Act ("CLRA"), (7) violation of California Welfare and Institutions Code § 15610.30 (elder financial abuse), (8) fraud, (9) accounting, and (10) declaratory judgment.  Each of the claims is addressed below.

B.   TILA Damages Claim

In her counter-complaint, Ms. Hillery actually asserts two TILA claims, one for rescission and one for damages.  The damages claim seems to be predicated on the allegation that, when New Century and thereafter Consumer Solutions failed to honor her rescission of the loan agreement, Ms.

1  Hillery was harmed because she lost the terms of the prior World Savings loan on her home.  *See*

2  Counter-Compl. ¶ 39.  Consumer Solutions has not challenged the rescission claim but does argue

3  that the damages claim should be dismissed because it is time barred.  Consumer Solutions argues

4  that, for any damages claim under TILA, the applicable statute of limitations is one year pursuant to

5  15 U.S.C. § 1640(e).  Section 1640(e) provides that "[a]ny action under this section may be brought

6  . . . within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).

7      It is well established that § 1640(e)'s one-year limitations period is applicable to TILA

8  damages claim.  *See, e.g.*, *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986) ("[T]he

9  one-year limitation applies only to damage actions."); *Velazquez v. GMAC Mortg. Corp.*, 605 F.

10  Supp. 2d 1049, 1060 (C.D. Cal. 2008) ("[T]he statute of limitations for a TILA damages claim is one

11  year.").  Nevertheless, Ms. Hillery argues that the applicable statute of limitations is actually three

12  years, not one, because she has made a rescission claim in conjunction with her damages claim.

13  According to Ms. Hillery, "reading [15 U.S.C. §§] 1635(f) and 1635(g) together, the period of time

14  in which [she] has to seek monetary damages becomes three years rather than one."  Opp'n at 15.

15  The Court does not find this argument persuasive.

16      Section 1635(f) permits the borrower to rescind the loan within "three years after the date of

17  consummation of the transaction" if the lender fails to comply with the TILA's disclosure

18  requirements.  15 U.S.C. § 1635(f).  Section § 1635(g) -- added as an amendment to TILA in 1980 --

19  provides: "In any action in which it is determined that a creditor has violated this section, in addition

20  to rescission the court may award relief under section 1640 of this title for violations of this

21  subchapter not relating to the right to rescind."  *Id.* § 1635(g).  "Although the Ninth Circuit does not

22  appear to have addressed the issue, numerous district courts have held the relief provided by §

23  1635(g) is subject to the one-year statute of limitations of § 1640(e)."  *Cabalo v. EMC Mortg. Corp.*,

24  No. C-08-5667 MMC, 2009 U.S. Dist. LEXIS 8283, at *7-8 (N.D. Cal. Feb. 5, 2009) (citing cases).

25  *See, e.g.*, *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1114 (E.D. Cal. 2009); *Brown v.*

26  *Nationscredit Fin. Servs. Corp.*, 349 F. Supp. 2d 1134, 1137 (N.D. Ill. 2005).  This is because

27  "§1635(g) does not appear to create a right to damages separate from that provided by § 1640;

28  rather, as one district court put it, § 1635(g) merely 'clarif[ies] that a plaintiff bringing a claim for

4

1    rescission could also sue for statutory damages' under § 1640, subject to the statute of limitations

2    provided in § 1640(e)." *Cabalo*, 2009 U.S. Dist. LEXIS 8283, at *8-9; *see also Brown*, 349 F. Supp.

3    2d at 1137 (explaining the same).  The Court agrees with the above cases.  A strict reading of the

4    applicable statutes demonstrates that an action for damages, as distinct from an action for rescission,

5    must be brought within one year.

6        The Court therefore agrees with Consumer Solutions that Ms. Hillery's TILA damages claim

7    is subject to a one-year statute of limitations.  Ms. Hillery has made no argument that she would not

8    be time barred if a one-year limitations period were applicable.  Even if she had, the Court would

9    reject the argument because, once Ms. Hillery gave notice of the rescission on August 21, 2006, then

10   New Century had twenty days to act on the notice.  *See* 15 U.S.C. § 1635(b).  Once New Century

11   failed to respond within that timeframe, then Ms. Hillery knew or should have known that she had a

12   claim for damages and therefore the statute of limitations began to run.  Ms. Hillery, however, did

13   not file her counterclaim for TILA damages until May 2009 -- almost three years later.  While a

14   limitations period may be equitably tolled, *see King*, 784 F.2d at 915 (noting that "the doctrine of

15   equitable tolling may, in the appropriate circumstances, suspend the limitations period until the

16   borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form

17   the basis of the TILA action"), Ms. Hillery did not in her opposition make any argument of equitable

18   tolling.  Accordingly, the Court dismisses the TILA damages claim as time barred.  The dismissal is

19   with prejudice.

20   C.    HOEPA Claim

21       The purpose of HOEPA, which amended TILA, is to "combat predatory lending."  *In re First

22   Alliance Mortg. Co.*, 471 F.3d 977, 984 n.1 (9th Cir. 2006).  For loans that fall within the scope of

23   HOEPA, the Act requires, *inter alia*, that lenders make certain warnings and disclosures at least

24   three business days prior to the consummation of a HOEPA transaction.  *See* 15 U.S.C. §

25   1639(a)-(b)(1).  Ms. Hillery alleges that New Century violated HOEPA by, *e.g.*, failing to provide

26   certain notices and by failing to provide accurate information about the interest rate being charged.

27   *See* Counter-Compl. ¶¶ 45-46.  According to Ms. Hillery, Consumer Solutions, as assignee of the

28   mortgage loan at issue, is liable for New Century's acts or omissions.  *See* Counter-Compl. ¶ 47.

1  Ms. Hillery seeks damages for the violation of HOEPA.  *See* Counter-Compl. at 26 (Prayer for

2  Relief ¶ 9).

3       In its motion, Consumer Solutions argues that the HOEPA claim should be dismissed both

4  because it is time barred and because the mortgage loan at issue does not fall under the scope of the

5  Act.  The Court agrees on both grounds.

6       First, the claim should be dismissed based on the statute of limitations.  As HOEPA is simply

7  part of TILA, it is governed by the same statute of limitations.  *See In re Community Bank of*

8  *Northern Va.*, 418 F.3d 277, 304-05 (3d Cir. 2005) (noting that there is a "one-year statute of

9  limitations on affirmative TILA and HOEPA claims").  For reasons similar to those discussed above

10  with respect to the TILA damages claim, Ms. Hillery's HOEPA claim for damages is also untimely.

11       Second, in order to be a HOEPA loan, a loan must meet one of the following criteria:

12      (A)    the annual percentage rate at consummation of the transaction
13              will exceed by more than 10 percentage points the yield on
            Treasury securities having comparable periods of maturity on
14              the fifteenth day of the month immediately preceding the
            month in which the application for the extension of credit is
15              received by the creditor; or

16      (B)    the total points and fees payable by the consumer at or before
            closing will exceed the greater of --

17          (i)    8 percent of the total loan amount; or

18          (ii)    $ 400.

19  15 U.S.C. § 1602(aa)(1).

20       TILA's implementation regulation, known as Regulation Z, amplifies HOEPA's coverage as

21  follows:

22        The annual percentage rate at consummation will exceed by more than
      8 percentage points for first-lien loans, or by more than 10 percentage
23        points for subordinate-lien loans, the yield on Treasury securities
      having comparable periods of maturity to the loan maturity as of the
24        fifteenth day of the month immediately preceding the month in which
      the application for extension of credit is received by the creditor.

25

26  12 C.F.R. § 226.32(a)(1).

27       In the instant case, it is not clear whether the mortgage loan at issue is a first-lien loan or a

28  subordinate loan.  Assuming, however, the former -- which is more favorable to Ms. Hillery -- then

United States District Court

For the Northern District of California

1   the annual percentage rate at the consummation of the transaction could not exceed 13.11%.  (The

2   yield on the relevant Treasury securities was 5.11%.[2])  Ms. Hillery argues that the annual percentage

3   rate for her loan exceeded 13.11% because the promissory note at issue provides that the interest

4   rate will never be greater than 14.450%.  *See* Docket No. 61 (Gunderson Decl., Ex. A) (adjustable

5   rate balloon note).  However, HOEPA focuses on the annual percentage rate at the consummation of

6   the transaction, not the lifetime cap.  *See Moore v. Chase Bank*, No. 08-0350 SC, 2008 WL 961161,

7   at *5 (N.D. Cal. Apr. 7, 2008) (holding that "the operative rate [to trigger HOEPA] is the rate of the

8   loan at the time the mortgage agreement was made" -- not the ceiling rate).  The promissory note

9   lists an interest rate of 7.45%,[3] *see* Counter-Compl. at 6; Docket No. 61 (Gunderson Decl., Ex. A)

10  (adjustable rate balloon note).  It clearly does not exceed 13.11%.  Also, Consumer Solutions claims

11  that the TILA Disclosure Statement, the authenticity of which appears undisputed, discloses an

12  annual percentage rate of 11.248%, *see* Mot. at 9 & Ex. C (TILA Disclosure Statement), which is

13  also less than 13.11%.[4]  Because Ms. Hillery has failed to establish that, at the time of

14  _____

15  [2] Ms. Hillery's loan was extended on August 18, 2006.  Therefore, the Court must determine what the
    yield on Treasury securities having a comparable period of maturity was for July 15, 2006.  The Court
16  takes judicial notice that the yield for a 30-year security, which at the time was the closest maturity to
    a 40-year mortgage, was 5.11%, as argued by Consumer Solutions.  *See* U.S. Department of Treasury,
17  http://www.treas.gov/offices/domestic-finance/debt-management/interest-
    rate/yield_historical_2006.shtml (last visited Aug. 6, 2009); Federal Reserve Board,
18  http://www.federalreserve.gov/releases/h15/data/Business_day/H15_TCMNOM_Y30.txt (last visited
    Aug. 6, 2009); *see also In re Laudani*, 401 B.R. 9, 32 (Bankr. D. Mass. 2009) (relying on the yield on
19  20-year treasury bonds, which at the time was the closest maturity to a 30-year mortgage, to determine
    if HOEPA applied).  In her opposition, Ms. Hillery does not dispute that this was the proper percentage
20  rate.  Adding 8% to that figure yields an annual percentage rate of 13.11%, compared with the 11.248%
    rate set forth in the Truth-in-Lending Disclosure Statement.  *See* Mot. (Ex. C) (Truth-in-Lending
21  Disclosure Statement).

22  [3] Ms. Hillery alleges in her counter-complaint that this was the interest rate provided for in the
    promissory note.  This is also borne out by the copy of the promissory note previously submitted to the
23  Court as evidence.

24  [4] Although this is a motion to dismiss, the Court may take judicial notice of the TILA Disclosure
    Statement, which was referenced in Ms. Hillery's counter-complaint.  *See* Counter-Compl. ¶ 35;
25  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (noting that materials outside complaint may be
    considered without converting motion to summary judgment if they are "integral" to complaint and it
26  is clear on record that no dispute exists regarding authenticity or accuracy of materials); *Parrino v. FHP,
    Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (stating that, in ruling on motion to dismiss, district court may
27  consider document not explicitly incorporated in complaint and not attached to complaint, but
    authenticity of which is not questioned and on which complaint necessarily relies); *In re Stacs Elecs.
28  Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (stating that "[d]ocuments whose contents are alleged
    in a complaint and whose authenticity no party questions, but which are not physically attached to the

consummation, the annual percentage rate for her loan exceeded 13.11%, the HOEPA claim must be dismissed.

For both of the above reasons, the HOEPA claim is dismissed with prejudice.

D.    California Predatory Lending Claim

In her counter-complaint, Ms. Hillery claims that New Century Mortgage violated § 4973 of the California Finical Code by, *inter alia*, failing to offer a loan without a prepayment fee or penalty and failing to provide certain disclosures.  *See* Counter-Compl. ¶¶ 60-65.  According to Ms. Hillery, Consumer Solutions is also liable for the same violations because Consumer Solutions tried to enforce the loan in spite of its knowledge of those violations.  *See* Counter-Compl. ¶ 66.

In its motion, Consumer Solutions argues, similar to above, that the mortgage loan at issue is not covered by the scope of the relevant Financial Code provision.  Section 4973, entitled "Prohibited acts and limitations for covered loans," is limited to "covered loans."  Under § 4970,

> (b)    "Covered loan" means a consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association[(Fannie Mae)] in the case of a mortgage or deed of trust, and where one of the following conditions are met:
>
> (1)    For a mortgage or deed of trust, the annual percentage rate *at consummation of the transaction* will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.
>
> (2)    The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount.

Cal. Fin. Code § 4970(b) (emphasis added).

As above, Ms. Hillery's contention that the annual percentage rate for her loan is excessive is predicated on the fact that the promissory note provides for a lifetime cap of 14.450%.  This position fails to take into account the critical language that it is the rate "at consummation of the transaction"

---

pleading, may be considered") (internal quotation marks omitted).

United States District Court
For the Northern District of California

1    that is relevant.  As noted above, the initial interest rate did not exceed the applicable limit.

2    Accordingly, the Court dismisses the California predatory lending claim with prejudice.

3    E.    Quiet Title Claim

4        To state a claim for quiet title, a complaint must include (1) a "legal description [of the

5    property] and its street address or common designation, if any," (2) the title of the plaintiff and the

6    basis of the title, (3) "[t]he adverse claims to the title of the plaintiff," (4) "[t]he date as of which the

7    determination is sought," and (5) "[a] prayer for the determination of the title of the plaintiff against

8    the adverse claims."[5]  Cal. Civ. Pro. Code § 761.020.  The purpose of a quiet title action is to

9    determine "all conflicting claims to the property in controversy, and to decree to each such interest

10   or estate therein as he may be entitled to."  *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970).

11       In the instant case, it is clear that the parties have a dispute regarding ownership of the real

12   property at issue.  Even so, the particular quiet title claim pled by Ms. Hillery is defective for the

13   reasons discussed below.

14       Ms. Hillery's claim of quiet title is predicated on one of two theories -- either that she owns

15   the property outright without any obligation to Consumer Solutions pursuant to 15 U.S.C. § 1635(b)

16   or, in the alternative, that she owns the property and any debt owed to Consumer Solutions is

17   unsecured.  *See* Counter-Compl. ¶¶ 30-31.

18       The first theory is disposed of easily.  Section 1635(b) provides as follows:

19           Return of money or property following rescission.  When an obligor
             exercises his right to rescind under subsection (a), he is not liable for
20           any finance or other charge, and any security interest given by the
             obligor, including any such interest arising by operation of law,
21           becomes void upon such a rescission.  Within 20 days after receipt of a
             notice of rescission, the creditor shall return to the obligor any money
22           or property given as earnest money, down payment, or otherwise, and
             shall take any action necessary or appropriate to reflect the termination
23           of any security interest created under the transaction.  If the creditor
             has delivered any property to the obligor, the obligor may retain
24           possession of it.  Upon the performance of the creditor's obligations
             under this section, the obligor shall tender the property to the creditor,
25           except that if return of the property in kind would be impracticable or
             inequitable, the obligor shall tender its reasonable value.  Tender shall

26

27   [5] The complaint must also be verified, *see* Cal. Code Civ. Proc. § 761.020, which was not done in the
     instant case.  Presumably, however, the lack of a verification is a technicality that Ms. Hillery could
28   easily cure.

> be made at the location of the property or at the residence of the obligor, at the option of the obligor. *If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.* The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b) (emphasis added).

As Consumer Solutions argues in its motion, § 1635(b) is applicable only where the obligor tenders property to the creditor and the creditor does not take possession within twenty days. *See* 15 U.S.C. § 1635(b). There is no indication in the instant case that Ms. Hillery tendered any property to New Century, Consumer Solutions, or an agent of either and was refused. For example, there is no indication that she offered to repay the full amount of the loan but was refused.

As to the second theory, Ms. Hillery's position is, in essence, that once she provided the notice of rescission to New Century, then the rescission automatically took effect, thus rendering the deed of trust held by New Century and any of its successors -- *i.e.*, Consumer Solutions -- a nullity and leaving the promissory note an unsecured debt. According to Consumer Solutions, Ms. Hillery's position has been rejected by the Ninth Circuit in *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003).

In *Yamamoto*, the plaintiff made the very argument that, once she exercised her right to rescind, the defendant's security interest in her property was automatically voided. In addressing this argument, the Ninth Circuit noted as follows:

> If [the defendant] had acquiesced in [the plaintiff's] notice of rescission, then the transaction would have been rescinded automatically, thereby causing the security interest to become void . . . . But here, [the defendant] contested the notice and produced evidence sufficient to create a triable issue of fact about compliance with TILA's disclosure requirements. In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest "becomes void" only when the consumer "rescinds" the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor.

*Id.* at 1172 (emphasis in original). In short, the Ninth Circuit held that a "'security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either

10

**United States District Court**
For the Northern District of California

1   because the creditor acknowledges that the right of rescission is available, or because the appropriate

2   decision maker has so determined . . . . Until such decision is made, the [borrowers] have only

3   advanced a claim seeking rescission.'" *Id.*; *see also Large v. Conseco Fin. Serv'g Corp.*, 292 F.3d

4   49, 54-55 (1st Cir. 2002) (concluding the same).

5          Notably, the court also stated that, even if all the elements of a rescission are present,

6          "a trial judge has the discretion to condition rescission on tender by
           the borrower of the property he had received from the lender." . . .

7          [W]hether a decree of rescission should be conditional depends upon
           "the equities present in a particular case, as well as consideration of

8          the legislative policy of full disclosure that underlies the Truth in
           Lending Act and the remedial-penal nature of the private enforcement

9          provisions of the Act."

10  *Id.* at 1171.

11         In her opposition, Ms. Hillery asserts that there is a basis for automatic rescission in the case

12  at hand because New Century, and later Saxon, acknowledged her right to rescind.  The problem

13  with this argument is that, contrary to what Ms. Hillery argues, there is no evidence that New

14  Century, Consumer Solutions, or an agent of either ever acknowledged Ms. Hillery's right to

15  rescind.  According to Ms. Hillery, acknowledgment was made by New Century in a letter dated

16  March 19, 2007.  However, that letter simply states:

17         New Century Mortgage Corporation . . . is in *receipt* of your clients'
           request to rescind the above referenced loan.  NCMC is prepared to

18         *resolve* your clients' claim provided they accomplish the rescission by
           paying the amount listed below within 30 days and returning the

19         enclosed Settlement Agreement and Release signed by all parties in its
           original form.

20

21  Docket No. 7 (Ex. 2) (letter) (emphasis added).  In other words, all that New Century said in the

22  letter was that it had received her request to rescind and that it was prepared to settle the matter.

23  This cannot be equated with a concession that Ms. Hillery had the right to rescind.[6]  Because there

24  was no acknowledgment of a right to rescind, Ms. Hillery's notice of rescission did not

25  automatically render the deed of trust for her property invalid.  *See Yamamoto*, 329 F.3d at 1172.

26  ───────────────

27  [6] At the hearing, Ms. Hillery argued that whether or not the letter constituted an acknowledgment is a
    question of fact for the trier of fact to resolve.  However, a question of fact cannot be created where

28  there is none.  Here, the letter clearly did not constitute a concession that Ms. Hillery had the right to
    rescind.

United States District Court

For the Northern District of California

1 Accordingly, Ms. Hillery's contention that the promissory note is at best an unsecured debt must be

2 rejected.

3    The Court therefore dismisses Ms. Hillery's claim for quiet title.  In so doing, the Court notes

4 that it is not ruling that rescission is not a possible remedy for Ms. Hillery or that her TILA

5 rescission claim is invalid.  The Court simply holds that the particularly theories underlying the quiet

6 title claim asserting she owns the property outright or that the loan is unsecured is without merit and

7 therefore dismisses the claim.  The dismissal is with prejudice.

8 F.    RESPA Claim

9    "Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home

10 purchasing process."  *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002).  It

11 sought to implement significant reforms in the real estate settlement process which "are needed to

12 insure that consumers throughout the Nation are provided with greater and more timely information

13 on the nature and costs of the settlement process."  12 U.S.C. § 2601.  RESPA applies not only to

14 the actual settlement process, however, but also to the servicing of federally related mortgage loans.[7]

15 *See, e.g.*, *id.* § 2605(e) (imposing requirements on servicers of federally related mortgage loans).  In

16 her counter-complaint, Ms. Hillery alleges that Saxon, which at one time was the servicer of her

17 loan, violated RESPA; at the hearing, Ms. Hillery asserted that Consumer Solutions is vicariously

18 liable for Saxon's actions since Saxon was acting as Consumer Solutions' agent in servicing the

19 loan.

20    The specific provision that Saxon allegedly violated is 12 U.S.C. § 2605(e).  Section 2605(e)

21 is titled "[d]uty of loan servicer to respond to borrower inquiries."  It provides in relevant part as

22 follows.

23        (1)    Notice of receipt of inquiry

24              (A)    In general.  If any servicer of a federally
25                     related mortgage loan receives a
                       qualified written request from the
26                     borrower (or an agent of the borrower)
                       for information relating to the servicing

27 _____

28 [7] Federally related mortgage loans include any loans secured by a first or subordinate lien on residential
real property.  *See* 12 U.S.C. § 2602(1)(A).

1                              of such loan, the servicer shall provide a
2                              written response acknowledging receipt
3                              of the correspondence within 20 days . . . unless the action requested is taken within such period.

                (B)    Qualified written request.  For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

        (i)    includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

        (ii)    includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e).  The terms "servicer" and "servicing" are defined in § 2605(i).  "The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  *Id.* § 2605(i)(2).  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  *Id.* § 2605(i)(3).

        According to Ms. Hillery, Saxon violated § 2605 because, on or about May 24, 2008, she sent a letter to Saxon that constituted a qualified written request ("QWR") and Saxon failed to respond within the required twenty days.  *See* Docket No. 46 (Counter-Compl., Ex. 1) (letter).  As noted above, Ms. Hillery goes on to argue that Consumer Solutions is vicariously liable for Saxon's failure to act because Saxon was acting as Consumer Solutions' agent.  In response, Consumer Solutions argues that it cannot be held liable for Saxon's failure to act because § 2605(e) imposes a duty upon the loan servicer only.  According to Consumer Solutions, Congress could have imposed such a duty on the loan owner, but chose not to, and interpreting RESPA to allow for liability based on common law agency theories would go against congressional intent.  Neither party has cited any specific legal authority directly addressing the issue of vicarious liability.

1    For purposes of this opinion, the Court finds it unnecessary to address the vicarious liability

2    issue because Ms. Hillery's RESPA claim founders for an independent reason.  Under § 2605(e), a

3    loan servicer has an obligation to act when it receives a QWR from the borrower or borrower's agent

4    "for information relating to the servicing of [the] loan."  12 U.S.C. § 2605(e)(1)(A).  As noted

5    above, "'servicing' means receiving any scheduled periodic payments from a borrower . . . and

6    making the payments of principal and interest and such other payments with respect to the amounts

7    received from the borrower."  *Id.* § 2605(i)(3).  In the instant case, Ms. Hillery's letter of May 24,

8    2008, simply disputed the validity of the loan and not its servicing (*e.g.*, not whether Saxon had

9    failed to credit her for payments she made pursuant to the loan).  *See MorEquity, Inc. v. Naeem*, 118

10   F. Supp. 2d 885, 900-01 (N.D. Ill. 2000) (noting that the "[t]he counterclaim alleges [that the request

11   alleged] a forged deed, and irregularities with respect to the recoding of the two loans, but [made] no

12   claim with respect to improper servicing" and therefore dismissing claim pursuant to § 2605(e)).

13   That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that

14   § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan.

15   Accordingly, the Court dismisses Ms. Hillery's RESPA claim.  The dismissal is with

16   prejudice.

17   G.   FDCPA Claim

18   Under the FDCPA, a debt collector is required to send a consumer, "[w]ithin five days after

19   the initial communication with [the] consumer," a written notice containing, *inter alia*, "a statement

20   that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the

21   debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  15 U.S.C. §

22   1692g(a).  "If the consumer notifies the debt collector in writing within the thirty-day period

23   described [above] that the debt . . . is disputed . . . the debt collector shall cease collection of the debt

24   . . . until the debt collector obtains verification of the debt."  *Id.* § 1692g(b).  According to Ms.

25   Hillery, Saxon (the loan servicer) and MERS (the legal beneficiary of the deed of trust for Ms.

26   Hillery's property) violated the FDCPA because, in May and July 2008, Ms. Hillery sent the

27   companies debt verification requests and both failed to verify the debt within five days.  Ms. Hillery

28

United States District Court

For the Northern District of California

1    goes on to argue that Consumer Solutions is vicariously liable for Saxon and MERS's failure to act

2    because they were acting as Consumer Solutions' agents.  *See* Counter-Compl. ¶ 56.

3          Even assuming, for purposes of this opinion, that (1) Saxon and MERS constitute debt

4    collectors under the FDCPA and that (2) Consumer Solutions may be held liable for the actions of

5    Saxon and MERS, Ms. Hillery has failed to state a claim for relief under the statute.  If Ms. Hillery

6    had sent debt verification requests in accordance with § 1692g(b),[8] then Saxon and MERS were

7    obligated to cease collection of the debt until the debt was verified.  The debt verification requests

8    did not require the companies to take any action within five days.

9          While § 1692g(a) does provide for a five-day period for a debt collector to take action, that

10   action is to provide a written notice to the consumer that he or she has the right to dispute the

11   validity of the debt.  The debt collector is required to provide this notice to the consumer but only

12   "[w]ithin five days after the *initial* communication with [the] consumer."  15 U.S.C. § 1692g(a)

13   (emphasis added).  To the extent Ms. Hillery is trying to argue that Saxon and MERS (and therefore

14   Consumer Solutions) failed to comply with this provision, her counter-complaint is problematic

15   because it does not identify when Saxon and MERS first communicated with her.  At least with

16   respect to Saxon, it is clear from the evidence of record that it had communicated with Ms. Hillery

17   well before Ms. Hillery sent her debt verification requests in May or July 2008.  As noted above,

18   back on September 28, 2007, Saxon sent a letter to Ms. Hillery, stating that it had received the

19   request to rescind and was prepared to resolve the claim provided that Ms. Hillery pay a certain sum

20   and sign a settlement agreement and release.  *See* Counter-Compl. at 7; Docket No. 20 (Ex. E)

21   (letter, dated 9/28/2007).  If the September 28, 2007, letter that Saxon sent to Ms. Hillery was the

22   initial communication, then any FDCPA claim against Saxon (and therefore Consumer Solutions)

23   would be time barred.  There is a one-year statute of limitations pursuant to 15 U.S.C. § 1692k(d)

24   (providing that "[a]n action to enforce any liability created by this title [15 U.S.C. §§ 1692 *et seq.*]

25

26   _____

     [8] If a debt verification request were sent outside the relevant time period, then the debt collector would
27   not have a duty to verify.  *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1203 (9th
     Cir. 1999) (finding, in a discussion of debtor's claim under § 1692g(b), that debtor's "tardy request for
28   verification of the debt . . . did not trigger any obligation on the part of the [debt collector] to verify the
     debt").

**United States District Court**
For the Northern District of California

1    may be brought in any appropriate United States district court without regard to the amount in

2    controversy, or in any other court of competent jurisdiction, within one year from the date on which

3    the violation occurs"), and here Ms. Hillery did not make any counterclaim until almost two years

4    after the September 28, 2007, letter.

5          The Court therefore dismisses the FDCPA claim.  To the extent the FDCPA claim against

6    Consumer Solutions is predicated on Saxon's conduct, the dismissal is with prejudice.  Otherwise,

7    Ms. Hillery has leave to amend with respect to this claim if she can state a claim consistent with the

8    above analysis.  The Court does not resolve at this time whether MERS and/or Consumer Solutions

9    may be liable under FDCPA either as a debt collector or vicariously.  Nor does the Court address

10   what constituted the "initial communication" other than the September 28, 2007, letter.  Should Ms.

11   Hillery amend, she should clearly specify the particular factual basis of her FDCPA claim.

12   H.    CLRA Claim

13         The CLRA makes unlawful certain "unfair methods of competition and unfair or deceptive

14   acts or practices undertaken by any person in a transaction intended to result or which results in the

15   sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  "Goods" are defined

16   as "tangible chattels bought or leased for use primarily for personal, family, or household purposes."

17   Cal. Civ. Code § 1761(a).  "Services" are defined as "work, labor, and services for other than a

18   commercial or business use, including services furnished in connection with the sale or repair of

19   goods."  Cal. Civ. Code § 1761(b).  In the instant case, Ms. Hillery asserts that Consumer Solutions

20   engaged in unfair or deceptive conduct prohibited by the CLRA by, *inter alia*, demanding money to

21   which it is not entitled and trying to enforce a rescinded loan.  *See* Counter-Compl. ¶ 73.  In

22   response, Consumer Solutions argues that the CLRA is inapplicable to the instant case because a

23   mortgage loan is neither a good or service within the meaning of the statute.

24         In support of its position, Consumer Solutions cites, *inter alia*, *Berry v. American Express

25   Publishing, Inc.*, 147 Cal. App. 4th 224 (2007).  There, the plaintiff had alleged that the credit

26   cardholder agreement with his credit card company violated the CLRA.  The court found that the

27   extension of credit did not qualify as either a good or service under the CLRA.  *See id.* at 229-30.  In

28   so ruling, the court noted that the statute as originally drafted expressly included the extension of

United States District Court

For the Northern District of California

1    "money" and "credit" as within the scope of the Act. *See id.* at 230-33. The version passed by the

2    legislature, however, omitted these terms. *See id.* at 230-31. Relying on this change, the court held

3    that the "extension of credit, such as issuing a credit card, separate and apart from the sale or lease of

4    any specific goods or services, does not fall within the scope of the [CLRA]." *Id.* at 233.

5            In turn, Ms. Hillery argues that Consumer Solutions' position should be rejected in light of

6    decisions from other courts in this District, which have held that the CLRA is applicable to mortgage

7    loans. *See, e.g.*, *Hernandez v. Hilltop Financial Mortgage, Inc.*, No. C06 7401 SI, 2007 WL

8    3101250, at *6 (N.D. Cal. Oct. 22, 2007); *Jefferson v. Chase Home Finance LLC*, No. C06 6510

9    TEH, 2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007); *Knox v. Ameriquest Mortgage Co.*, No.

10   C05 00240 SC, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005). In these cases, however, the

11   defendant provided additional services over and above the extension of credit, although the services

12   alleged may have been minimal. *See Hernandez*, 2007 WL 3101250, at *6 ("[U]nlike in *Berry*, the

13   situation in the present case involves more than the mere extension of a credit line. Instead, the

14   circumstances here deal not just with the mortgage loan itself, but also with the services involved in

15   developing, securing, and maintaining plaintiffs' loan."). Thus, these cases are of no real support to

16   Ms. Hillery's case. Ms. Hillery is not challenging services related to the mortgage loan but rather

17   the validity of the mortgage loan itself.

18           Furthermore, the California Supreme Court's recent decision in *Fairbanks v. Superior Court*,

19   46 Cal. 4th 56 (2009), further undercuts the value of the above cases to Ms. Hillery. In *Fairbanks*,

20   the California Supreme Court held that life insurance is not covered by the CLRA because it is not a

21   good or service as defined by the Act. *See id.* at 61. The court rejected the plaintiff's argument that

22   "the work or labor of insurance agents and other insurance company employees [(1)] in helping

23   consumers select policies that meet their needs, [(2)] in assisting policyholders to keep their policies

24   in force, and [(3)] in processing claims are services that are sufficient to bring life insurance within

25   the reach of the CLRA." *Id.* at 65.

26                    As [defendant] points out, ancillary services are provided by the
                      sellers of virtually all intangible goods -- investment securities, bank
27                    deposit accounts and loans, and so forth. The sellers of virtually all
                      these intangible items assist prospective customers in selecting
28                    products that suit their needs, and they often provide additional

1       customer services related to the maintenance, value, use redemption,
2       resale, or repayment of the intangible item.  Using the existence of
     these ancillary services to bring intangible goods within the coverage
     of the CLRA would defeat the apparent legislative intent in limiting
3       the definition of "goods" to include only "tangible chattels."

4  *Id.  Fairbanks* thus indicates that loans are intangible goods and that ancillary services provided in

5  the sale of intangible goods do not bring these goods within the coverage of the CLRA.  *See also*

6  *Rand v. American Nat'l Ins. Co.*, No. 09-0639 SI, 2009 WL 2252115, at *3 (N.D. Cal. July 28,

7  2009) (discussing *Fairbanks* and emphasizing that ancillary services are insufficient to bring

8  insurance policy within coverage of CLRA).

9       Because Ms. Hillery has challenged only the validity of the mortgage loan and not any

10  nonancillary services related to the loan, the Court dismisses the CLRA claim with prejudice.

11  I.     Claim for Elder Financial Abuse

12       Under the Elder Abuse and Dependent Adult Civil Protection Act, elder financial abuse

13  occurs when a person or entity "[t]akes, secretes, appropriates or retains real or personal property of

14  an elder . . . for a wrongful use or with intent to defraud, or both."  Cal. Wel. & Inst. Code §

15  15610.30(a)(1) (2001).[9]  "A person or entity shall be deemed to have taken, secreted, appropriated,

16  or retained property for a wrongful use if, among other things, the person or entity takes, secretes,

17  appropriates or retains possession of property in bad faith."  *Id.* § 15610.30(b).  "Where it is proven

18  by a preponderance of the evidence that a defendant is liable for financial abuse . . . , in addition to

19  all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable

20  attorney's fees and costs."  *Id.* § 15657.5(a) (2005).[10]

21       In the instant case, Consumer Solutions argues that Ms. Hillery has failed to state a claim for

22  relief because there is no allegation that it took, secreted, appropriated, or retained her real property;

23  "[r]ather, it has remained in [her] possession throughout."  Mot. at 16.  This argument, however, is

24

25  [9] Section 15610.30 was recently amended, effective January 1, 2009.  However, the conduct of
26  Consumer Solutions that is at issue took place prior to 2009.  The Court, therefore, refers to the previous
version of § 15610.30, which was effective from January 1, 2001, to December 31, 2008.

27  [10] The conduct of Consumer Solutions that is at issue took place prior to 2009.  The Court, therefore,
28  refers to the previous version of § 15657.5, which was effective from January 1, 2005, to December 31,
2008.

United States District Court

For the Northern District of California

1    not persuasive since, even though the property may be in Ms. Hillery's possession at the moment,

2    Consumer Solutions is basically asserting a secured interest in the property unless Ms. Hillery pays a

3    certain sum.

4         That being said, the Court does agree with Consumer Solutions' implicit contention that,

5    despite the broad allegations made in the counter-complaint as to how Consumer Solutions engaged

6    in elder financial abuse, *see* Counter-Compl. ¶ 79 (listing numerous acts and omissions), the real

7    thrust of the claim is that Consumer Solutions violated the statute by trying to take the real property

8    away from Ms. Hillery through the nonjudicial foreclosure process.[11]  Ms. Hillery concedes as much

9    in her opposition. *See* Opp'n at 10 (focusing on Consumer Solutions' "attempt[] to seize title,

10   clouding the title with [a] lis pendens and previously recorded notices of default and demands upon

11   [Ms.] Hillery of payment of an illegitimate debt").  Thus, the gravamen of Ms. Hillery's claim is not

12   the making of the loan or obtaining the deed of trust, but the steps taken toward foreclosure on the

13   property.

14        The question is whether this conduct is, as Consumer Solutions argues, privileged pursuant

15   to California Civil Code §§ 47 and 2924(d).  Under § 47, a publication or broadcast is privileged

16   under certain circumstances.  Section 47(b) provides for an absolute litigation privilege; § 47(c)

17   provides for a qualified privilege, *i.e.*, where communications are made without malice, and to a

18   person interested therein, by one who is also interested.  Section 2924(d) provides that

19             [a]ll of the following shall constitute privileged communications
              pursuant to [California Civil Code] Section 47:
20
              (1)   The mailing, publication, and delivery of notices as required by
21                  this section [*i.e.*, § 2924 which generally governs nonjudicial
                    foreclosure sales].
22
              (2)   Performance of the procedures set forth in this article.
23
              (3)   Performance of the functions and procedures set forth in this
24                  article if those functions and procedures are necessary to carry
                    out the duties described in Sections 729.040, 729.050, and
25                  729.080 of the Code of Civil Procedure.

26

27   _____

28   [11] Ms. Hillery seems to concede that she is not making a claim of elder financial abused based on the
     initiation of this lawsuit which seeks, *inter alia*, judicial foreclosure.

United States District Court

For the Northern District of California

1    Cal. Civ. Code § 2924(d).  Notably, § 2924(d) does not specify which provision of § 47 is applicable

2    -- *i.e.*, the absolute litigation privilege provided for in (b) or the qualified privilege provided for in

3    (c).

4           Ms. Hillery's main contention is that the privilege provided for in § 2924(d) cannot be

5    applicable in the instant case because the privilege is available only to the foreclosure trustee (*i.e.*,

6    T.D. Service Company) and not, *e.g.*, to the beneficiary of the deed of trust (*i.e.*, Consumer

7    Solutions).  However, in *Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008), the state court

8    expressly stated that the § 2924(d) privilege is available not only to the trustee alone but also to the

9    beneficiary.  *See id.* at 340-41 & n.13.  Admittedly, the court stated that the privilege would be

10   available "to beneficiaries insofar as they may act as trustees," *id.* at 340; thus, an argument could be

11   made that, when a beneficiary simply directs the trustee to, *e.g.*, record a notice of default, the

12   trustee would be protected vis-a-vis the recordation but not the beneficiary.  *See id.* at 334 (noting

13   that, "[w]hen the trustor [*i.e.*, borrower] defaults on the debt secured by the deed of trust, the

14   beneficiary may declare a default and make a demand on the trustee to commence foreclosure").

15   However, the Court does not see merit in this interpretation because the power to record a notice of

16   default is given not only to the trustee but also the beneficiary pursuant to the California Civil Code.

17   *See* Cal. Civ. Code § 2924(a)(1) (providing that "[t]he trustee, mortgagee, or beneficiary, or any of

18   their authorized agents shall first file for record, in the office of the recorder of each county wherein

19   the mortgaged or trust property or some part or parcel thereof is situated, a notice of default").

20          While the§ 2924(d) privilege may be available to a beneficiary under some circumstances,

21   the § 2924(d) privilege does not incorporate the absolute litigation privilege provided for in § 47(b)

22   here.  The absolute litigation privilege applies to judicial and quasi-judicial proceedings only, and

23   "nonjudicial foreclosure is a private procedure involving private parties . . . . By definition, it does

24   not occur in a judicial proceeding."[12]  *Kachlon*, 168 Cal. App. 4th at 339.  Nevertheless, that does

25

26   _____

     [12] The *Kachlon* court acknowledged that, in *Garretson v. Post*, 156 Cal. App. 4th 1508 (2007), another
27   state appellate court held to the contrary -- *i.e.*, determined that "nonjudicial foreclosure activity
     constituted privileged communications under the litigation privilege [of § 47(b)(2)]."  *Id.* at 1517.  The
28   *Kachlon* court, however, pointed out that the legislative history was not, as the *Garretson* court had
     concluded, clear on this matter.  *See Kachlon*, 168 Cal. App. 4th at 336-38.

1   not mean that no privilege whatsoever is available for nonjudicial foreclosure activity. Indeed, in

2   *Kachlon*, the court ultimately concluded that the qualified privilege pursuant to § 47*(c)* may be

3   available. As the court noted in *Kachlon*, there is good reason to apply a qualified privilege, rather

4   than an absolute privilege, when the actions of a beneficiary are at issue as "[i]t is difficult to believe

5   that the Legislature intended to [completely] immunize the beneficiary (the creditor under the deed

6   of trust) from even a *malicious* initiation of nonjudicial foreclosure that might wrongfully deprive

7   the trustor of the property that secures the debt." *Id.* at 340-41 (emphasis in original). Thus, the

8   Court concludes, consistent with *Kachlon*, that Consumer Solutions as the beneficiary may be

9   protected by the qualified privilege of § 47(c) so long as its conduct was not malicious.

10        In the instant case, Ms. Hillery's counter-complaint does suggest that Consumer Solutions

11  acted maliciously. *See* Counter-Compl. ¶ 79. However, many, if not all, of the bases for the alleged

12  malice have been rendered inoperative by this order (*e.g.*, the alleged violation of HOEPA) or are

13  insufficiently specific to make a plausible claim of malice (*e.g.*, failing to respond to letters). *See*

14  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that a plaintiff must not merely allege

15  conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is

16  plausible on its face"). The Court therefore dismisses the claim for elder financial abuse but shall

17  give Ms. Hillery leave to amend to include specific allegations of malice.

18  J.   Fraud

19        Under California law, "[t]he elements of fraud . . . are (a) misrepresentation (false

20  representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

21  defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *City Solns., Inc.*

22  *v. Clear Channel Communs., Inc.*, 365 F.3d 835, 839 (9th Cir. 2004). In the instant case, Consumer

23  Solutions argues that the fraud claim as alleged by Ms. Hillery is too vague and thus violates Federal

24  Rule of Civil Procedure 9(b) which requires a party to "state with particularity the circumstances

25  constituting fraud."[13]  Fed. R. Civ. P. 9(b).

───────────────

27  [13] "[W]hile a federal court will examine state law to determine whether the elements of fraud have been
    pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud

28  must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d
    1097, 1103 (9th Cir. 2003).

1    The Court agrees with Consumer Solutions that Ms. Hillery has failed to meet the

2   particularity requirement of Rule 9(b).  "Averments of fraud must be accompanied by 'the who,

3   what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

4   1097, 1106 (9th Cir. 2003); *see also In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.

5   1994) (noting that conclusory allegations of fraud are insufficient and that there must be allegations

6   of the time, place, and nature of the fraudulent activity), *superseded by statute on other grounds*;

7   *Orlando v. Carolina Cas. Ins. Co.*, No. CIV F 07-0092 AWI SMS, 2007 WL 781598, at *8 (E.D.

8   Cal. Mar. 13, 2007) (noting that, "[b]ecause corporations speak through agents, allegations that a

9   corporation or its 'agents' committed fraud or made misrepresentations are generally insufficient,

10  and the specific identity of the agent must be alleged for purposes of Rule 9(b)").  In the instant case,

11  Ms. Hillery has only generally described the fraudulent acts of Consumer Solutions and,

12  accordingly, the claim for fraud must be dismissed with leave to amend.

13  K.    Accounting

14    In her counter-complaint, Ms. Hillery asserts a claim for accounting in order to establish

15  what money, if any, she owes to Consumer Solutions.  The problem for Ms. Hillery is that "[a] cause

16  of action for an accounting requires a showing . . . that some balance is due *the plaintiff* that can only

17  be ascertained by an accounting."  *Tesselle v. McLaughlin*, 173 Cal. App. 4th 156, 178 (2009)

18  (emphasis added).  Because Ms. Hillery's claim is not asking how much Consumer Solutions owes

19  her, the claim must be dismissed with prejudice.  *See Hafiz v. Aurora Loan Services*, No. C 09-1963

20  SI, 2009 WL 2029800, at *2 (N.D. Cal. Jul. 14, 2009) (dismissing claim for accounting because

21  "[p]laintiff does not cite any authority for the proposition that she can maintain a claim for an

22  accounting to determine how much money she owes defendant.")

23  L.    Declaratory Judgment

24    Finally, in her counter-complaint, Ms. Hillery seeks a declaration that she owes Consumer

25  Solutions nothing or, in the alternative, that the loan is an unsecured debt.  Consumer Solutions has

26  challenged the claim for declaratory relief on the basis that it is "wholly derivative of the substantive

27  law claims already asserted elsewhere in the [counter-complaint].  It adds nothing to the pleading . . .

28  ."  Mot. at 4.  Because the "existence of another adequate remedy does not preclude a declaratory

**United States District Court**
For the Northern District of California

1  judgment that is otherwise appropriate," Fed. R. Civ. P. 57, the Court denies Consumer Solutions'

2  motion to dismiss as to this claim.

3                     **III.   MOTION TO STRIKE**

4  A.   Legal Standard

5        Consumer Solutions has moved not only to dismiss but also to strike certain allegations in

6  Ms. Hillery's counter-complaint pursuant to Federal Rule of Civil Procedure 12(f).  More

7  specifically, Consumer Solutions seeks to strike (1) allegations related to conspiracy and joint

8  venture and (2) allegations that punitive damages are available.

9        Rule12(f) permits the Court to "[strike] from any pleading any insufficient defense or any

10 redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a

11 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating

12 spurious issues by dispensing with those issues prior to trial."  *Fantasy, Inc. v. Fogerty*, 984 F.2d

13 1524, 1527 (9th Cir. 1993) (quotations and citations omitted).  Immaterial matter is defined as

14 matter that "has no essential or important relationship to the claim for relief or the defenses being

15 pleaded."  *Id.* at 1527.  Impertinent matter is defined as "statements that do not pertain, and are not

16 necessary, to the issues in question."  *Id.* at 1527.  Scandalous matters are allegations "that

17 unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive

18 language that detracts from the dignity of the court," *Cobell v. Norton*, 224 F.R.D. 1, 5 (D.D.C.

19 2004), and "include[] allegations that cast a cruelly derogatory light on a party or other person." *In

20 re 2TheMart.com Secs. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

21       The proper medium for challenging the sufficiency of factual allegations in a complaint is

22 through Rule 12(b)(6)not Rule 12(f).  *See Parker v. Fidelity Security Life Ins. Co.,* No. CIV F

23 06-654 AWI DLB, 2006 WL 2190956, at *5 (E.D. Cal. Aug. 1, 2006); *Paul v. Gomez*, 190 F.R.D.

24 402, 404 (W.D. Va. 2000); *Outen v. Baltimore County*, 177 F.R.D. 346, 348 (D. Md. 1999).

25 However, where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as

26 a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule

27 12(b)(6) motion.  *See Parker*, 2006 WL 2190956, at *5 (converting a 12(f) motion to strike a

28 punitive damages claim into a 12(b)(6) motion); *U.S. v. $79,000 in Account Number*

1   *2168050/6749900 at Bank of New York*, No. 96 CIV. 3493 (MBM), 1996 WL 648934, at *6

2   (S.D.N.Y. Nov. 7, 1996) (noting that "[a] court can convert a motion improperly submitted under

3   Rule 12(f) to a Rule 12(b)(6) motion, which essentially applies the same standards of proof and

4   evidence"); *Korman v. Trusthouse Forte PLC*, Civ. A. No. 89-8734, 1991 WL 3481, at * (E.D. Pa..

5   Jan. 11, 1991) (stating that, "[w]here, as here, a Rule 12(f) motion attacks the sufficiency of the

6   allegations contained in a pleading, it is appropriate to convert that motion into one pursuant to Rule

7   12(b)(6)").  The Court does so in the instant case.

8          Consumer Solutions' argument that there are insufficient allegations of a conspiracy or a

9   joint venture is essentially moot in light of the Court's ruling on the motion to dismiss.  Under this

10  order, all of the claims asserted in the counter-complaint, except for the TILA rescission and

11  declaratory relief claims, have been dismissed.  For these remaining claims, allegations of a

12  conspiracy or a joint venture are immaterial.  However, to the extent Ms. Hillery amends her

13  counter-complaint consistent with this order and wishes to include either conspiracy or joint venture

14  theories, the Court notes that it will hold her to the standard articulated by the Supreme Court in

15  *Twombley*, 550 U.S. at 544, and thereafter in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) -- *i.e.*, there

16  must be a plausible claim of a conspiracy or a joint venture, not simply a conceivable one.  *See*

17  *Twombley*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949.

18         As to Consumer Solutions' argument that there are insufficient allegations justifying an

19  award of punitive damages, again, the argument is largely moot in light of the Court's ruling on the

20  motion to dismiss.  All of the federal claims have been dismissed except for the TILA rescission

21  claim, for which the only remedy sought is rescission.  As for the state law claim for fraud, it too has

22  been dismissed for failure to comply with Rule 9(b).

23                              **IV.   CONCLUSION**

24         For the foregoing reasons, the Court grants in part and denies in part Consumer Solutions'

25  motion to dismiss.  All claims asserted in the counter-complaint against Consumer Solutions are

26  hereby dismissed except for the TILA rescission claim and the claim for declaratory relief.

27  Consumer Solutions' motion to strike is moot.

28

United States District Court
For the Northern District of California

24

1        The Court shall give Ms. Hillery thirty days from the date of this order to file and serve an

2    amended complaint.  Ms. Hillery may amend her complaint with respect to the following claims:

3    the FDCPA claim (but not predicated on Saxon's conduct), the claim for elder financial abuse, and

4    the fraud claim.  Ms. Hillery may also include allegations of conspiracy consistent with *Twombley*

5    and *Iqbal*.  Service of the amended complaint shall be made not only on Consumer Solutions but

6    also on any other defendant named in the amended complaint (*e.g.*, Saxon, MERS).  Service as to

7    any other defendant must be made in accordance with Federal Rule of Civil Procedure 4.

8        This order disposes of Docket No. 52.

9        A case management conference is hereby scheduled for 2:00 p.m. on November 4, 2009.

10

11        IT IS SO ORDERED.

12

13    Dated: August 26, 2009

14                         _____

15                         EDWARD M. CHEN
                            United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California