UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER SOLUTIONS REO, LLC, | No. C-08-4357 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF CONSUMER SOLUTION'S MOTION TO DISMISS DEFENDANT HILLERY'S AMENDED COUNTERCLAIM; AND GRANTING IN PART AND DENYING IN PART COUNTER-CLAIM DEFENDANT SAXON MORTGAGE SERVICES' MOTION TO DISMISS DEFENDANT HILLERY'S AMENDED COUNTERCLAIM** |
| RUTHIE B. HILLERY, *et al.*, | |
| Defendants. | |
| _____/ | **(Docket Nos. 72, 78)** |

Previously, the Court issued an order granting in part and denying in part Counter-Defendant Consumer Solutions REO, LLC's motion to dismiss Counter-Claimant Ruthie B. Hillery's counterclaims. *See* Docket No. 70 (order, filed on 8/26/2009). The Court gave Ms. Hillery leave to amend three claims. Ms. Hillery thereafter filed her first amended counterclaims ("FACC"). Currently pending before the Court are two motions to dismiss, one filed by Consumer Solutions and the other by Counter-Defendant Saxon Mortgage Services, Inc.[1] Having considered the parties'

---

[1] Shortly before the hearing on the two motions to dismiss, the third Counter-Defendant in the case, MERS, joined the two motions. *See* Docket No. 92 (joinder). At the same time, MERS also filed its own separate motion to dismiss. *See* Docket No. 93 (motion). Since MERS has filed an independent motion to dismiss, the Court reserves any ruling as to MERS until after the briefing and hearing on MERS's motion has been completed. The Court emphasizes, however, that, in opposing MERS's motion, Ms. Hillery should take into the rulings made in this order. Though she may assert an argument in her opposition to preserve it for appeal, the Court does not intend to revisit any issues that it has already ruled upon on the merits.

briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part each motion to dismiss.

## I.   FACTUAL & PROCEDURAL BACKGROUND

In the FACC, Ms. Hillery alleges as follows.

Ms. Hillery, a senior citizen, is the owner of certain real property located in Pittsburg, California. *See* FACC ¶¶ 11, 16. Originally, she had a loan with respect to that property with a company by the name of World Savings. *See* FACC ¶ 16. In July or August 2006, she was contacted by a company named United Vision Financial about refinancing her home loan. *See* FACC ¶ 17. As a result, on or about August 18, 2006, Ms. Hillery entered into a new loan in the amount of $336,000. The lender for the new loan was a company by the name of New Century Mortgage. *See* FACC ¶¶ 18-19.

On August 21, 2006, Ms. Hillery gave notice to New Century that she was rescinding the loan agreement. Thereafter, she returned a cash-back check in the amount of $48,311. *See* FACC ¶ 20. Four months later, in December 2006, Ms. Hillery received a letter from New Century stating that she had defaulted on the loan. *See* FACC ¶ 21. Ms. Hillery advised New Century that she had rescinded the loan, but she did not get a response from New Century until March 19, 2007, *i.e.*, some seven months after her initial rescission. *See* FACC ¶ 21. New Century stated that it had received the request to rescind and was prepared to resolve the claim provided that, *inter alia*, Ms. Hillery sign a general release. *See* FACC ¶ 21. Subsequently, on September 28, 2007, Saxon, acting as the servicer of the Hillery loan, sent a similar letter, stating, *inter alia*, that it was prepared to resolve the claim provided that Ms. Hillery pay a sum certain ($266,379.31). *See* FACC ¶ 23.

More than six months passed after which, in May 2008, a notice of default was issued, stating that Ms. Hillery was in arrears in an amount exceeding $49,000. *See   See* FACC ¶ 26 & Ex. 3 (notice of default). This notice was subsequently rescinded. *See* Docket No. 26 (RJN, Ex. A) (notice of rescission). A second notice of default was issued in June 2008, this time stating that Ms. Hillery was in arrears in an amount exceeding $56,000. *See* FACC ¶¶ 26, 32; *see also* Docket No. 26 (RJN, Ex. B) (second notice of default).

Starting on May 24, 2008 – *i.e.*, after the first notice of default was issued – counsel for Ms. Hillery began writing letters to various companies who were involved with the Hillery loan and/or foreclosure proceedings. *See* FACC ¶ 33 & Ex. 1 (letters). Those companies included two entities that had serviced the Hillery loan: Saxon and Everhome Mortgage Company.[2] *See* FACC, Ex. 1. The exact letters that were sent were as follows:

- Letter, dated 5/24/2008 (*i.e.*, after the first notice of default), from Ms. Hillery's counsel to Saxon. *See* FACC, Ex. 1, at 3.
- Letter, dated 5/24/2008 (*i.e.*, after the first notice of default), from Ms. Hillery's counsel to MERS "as Nominee" for the beneficiary. FACC, Ex. 1, at 15.
- Letter, dated 7/10/2008 (*i.e.*, after the second notice of default), from Ms. Hillery's counsel to both MERS "as Nominee" for the beneficiary and Saxon. FACC, Ex. 1, at 27.
- Letter, dated 8/4/2008, from Ms. Hillery's counsel to Quality Loan Service Corporation (which acted as an agent for the beneficiary for the second notice of default). *See* FACC, Ex. 1, at 35; *see also* Docket No. 26 (RJN, Ex. B) (second notice of default).
- Letter, dated 9/23/2008 (*i.e.*, after this lawsuit was filed), from Ms. Hillery's counsel to Everhome.
- Second letter, dated 9/23/2008 (*i.e.*, after this lawsuit was filed), from Ms. Hillery's counsel to Everhome.

There was no response to any of the above letters until September 12, 2008, when counsel for Saxon wrote a letter stating that Ms. Hillery's obligation was due. *See* FAC ¶¶ 33, 35. Several days later, on September 17, 2008, Consumer Solutions and Saxon initiated this lawsuit. Consumer Solutions has asserted standing to bring the lawsuit on the basis that it is the current owner of the Hillery promissory note and deed of trust, having been assigned such through the New Century bankruptcy proceedings.

---

[2] Everhome did not start to service the loan until after this litigation commenced. *See* FACC, Ex. 1, at 52 (letter, dated 9/16/2008, from Saxon to Ms. Hillery) (notifying Ms. Hillery that servicing was being transferred to Everhome effective 10/1/2008).

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering such a motion, a court must take all well-pled allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While a complaint need not contain detailed factual allegations, it must plead enough facts to state a claim to relief that is plausible on its face. *See id.* at 1067-68.

> A claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted). *See generally Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

B. TILA Claim

As a preliminary matter, the Court notes that, in its prior order, it gave Ms. Hillery leave to amend only three claims against Consumer Solutions which brought the first motion to dismiss: (1) the Fair Debt Collection Practices Act claim, (2) the claim for elder financial abuse, and (3) the fraud claim. *See* Docket No. 70 (Order at 25). The Court did not give Ms. Hillery leave to amend her TILA damages claim; that claim was dismissed with prejudice as time barred. *See* Docket No. 70 (Order at 5). Notwithstanding that ruling, the Court now gives Ms. Hillery leave to amend so that she may replead a TILA damages claim as described below.[3]

---

[3] Although Ms. Hillery did not move for leave to amend, the Court shall in the interest of justice construe her opposition briefs as containing such a request. Saxon will not suffer any prejudice as a result because, as discussed below, the new TILA damages claim against it is futile. As for Consumer Solutions, it will not suffer any undue prejudice because it will still have the opportunity to file a motion to dismiss the new TILA damages claim.

4

1    The Court emphasizes that, to the extent Ms. Hillery seeks damages based on either
2 Consumer Solutions or Saxon's failure to rescind the loan agreement, that claim is still time barred
3 for the reasons stated in the Court's prior order. *See* Docket No. 70 (Order at 5) (explaining that,
4 once New Century did not respond to the notice of rescission within twenty days as required by
5 TILA, Ms. Hillery knew or should have known that she had a claim for damages and therefore the
6 statute of limitations began to run). However, Ms. Hillery now offers a new theory – *i.e.*, that she is
7 entitled to damages based on Counter-Defendants' alleged violation of 15 U.S.C. § 1641(f)(2).
8 Section 1641(f)(2) provides in relevant part that, "[u]pon written request by the obligor, the servicer
9 shall provide the obligor, to the best of the knowledge of the servicer, with the name, address, and
10 telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C.
11 § 1641(f)(2).

12    With respect to Saxon, a TILA damages claim predicated on a violation of § 1641(f)(2)
13 cannot stand because TILA allows for a suit against a creditor or an assignee but not a servicer
14 except under narrow circumstances not applicable here.[4] *See Fullmer v. JPMorgan Chase Bank,*
15 *NA*, No. 2:09-cv-1037 JFM, 2009 U.S. Dist. LEXIS 105999, at *22 (E.D. Cal. Nov. 13, 2009)
16 (noting that TILA "establishes a private right of action and provides for statutory damages for
17 violations of TILA only against the creditor . . . and assignees"; therefore, there can be no action
18 against a servicer).

19    However, at this juncture, the Court cannot say that a TILA damages claim against
20 Consumer Solutions based on a violation of § 1641(f)(2) would be futile. The Court acknowledges
21 that none of the letters that Ms. Hillery's counsel wrote were sent to Consumer Solutions. Ms.
22 Hillery contends, however, that Saxon's failure to respond – or even Everhome's failure to respond
23 – should be attributed to Consumer Solutions because each was acting as Consumer Solutions's
24 agent. The Court cannot say, at this juncture, that a loan beneficiary cannot be held vicariously
25 liable for the acts of its servicer-agent. As the Court noted at the hearing, given that the servicer

---

[4] *See* 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.").

5

cannot be held liable for damages for a § 1641(f)(2) violation, and the very nature of such a violation implies the debtor will not know the identity of and contact information for the owner of the note, the debtor would be left essentially without a remedy absent some form of vicarious liability. Such a result would seem particularly problematic in the not uncommon situation where a loan has been resold or packaged and securitized, leaving the ultimate owner of obligation several steps removed from the borrower. Neither party has cited to any authority on this specific issue, and it would seem that in light of the above, there is fair chance Congress intended vicarious liability to obtain. The Court therefore concludes that the best way to proceed is to deem Ms. Hillery's FACC as having repled (with leave to amend) a TILA damages claim against Consumer Solutions only based on an alleged violation of § 1641(f)(2). Consumer Solutions may, if it so desires, move to dismiss this TILA damages claim if it has a good faith basis for doing so. Such a motion supported by more comprehensive briefing should be filed within twenty (20) days of the date of this order.

C.  RESPA Claim

In her FACC, Ms. Hillery asserts a claim for violation of the Real Estate Settlement and Procedures Act ("RESPA") against Saxon only. According to Ms. Hillery, Saxon violated the Act by failing to respond to Qualified Written Requests that she had sent to it. *See* FACC ¶ 60.

Previously, the Court had dismissed a RESPA claim against Consumer Solutions. Notably, the Court rejected the claim based on the assumption that Consumer Solutions could be held vicariously liable for Saxon's failure to respond. The Court explained that Ms. Hillery had failed to state a claim for relief because a Qualified Written Request must ask for information relating to the servicing of the loan. "In the instant case, Ms. Hillery's letter of May 24, 2008, simply disputed the validity of the loan and not its servicing (*e.g.*, not whether Saxon had failed to credit her for payments she made pursuant to the loan)." Docket No. 70 (Order at 14). The Court added: "That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that [12 U.S.C.] § 2605(e) imposes a duty upon the loan servicer, and not the owner of the loan." Docket No. 70 (Order at 14).

In spite of the Court's ruling, Ms. Hillery has still asserted a claim against Saxon based on the letter of May 24, 2008, that her counsel sent to Saxon, as well as a subsequent letter, dated July

6

1  10, 2008.  *See* FACC, Ex. 1, at 3, 27 (letters).  As the Court previously held, in the May 24 letter,
2  counsel disputed the validity of the loan rather than its servicing.  *See* FACC, Ex. 1, at 10 (in
3  RESPA section of letter, stating that Ms. Hillery "disputes this alleged debt and the validity of the
4  trust deed which secures it," as well as "the amounts being demanded in the notice of default and the
5  notice of trustee sale").  As for the letter of July 10, counsel stated that "the information demanded
6  in the verified written [request of May 24] has not been provided" but there was no request for
7  information in the May 24 letter.  FACC, Ex. 1, at 32.

Accordingly, the Court dismisses with prejudice the RESPA claim asserted against Saxon.
As discussed below, the Court sanctions Ms. Hillery's counsel because this claim should not have
been reasserted given the Court's prior ruling.  Ms. Hillery wrongfully asserted that the basis of this
Court's earlier ruling was the lack of vicarious liability.  *See* Opp'n at 7-8.

D.    FDCPA Claim

In its prior order, the Court did give Ms. Hillery leave to amend this claim.  However, it
expressly stated that, "[t]o the extent the FDCPA claim against Consumer Solutions is predicated on
Saxon's conduct, the dismissal is with prejudice."  Docket No. 70 (Order at 16).  That was because,
based on a September 28, 2007, letter that Saxon sent to Ms. Hillery, any FDCPA claim against
Saxon (and therefore Consumer Solutions) would be time barred.  *See* Docket No. 70 (Order at 15).

In spite of this Court's ruling, Ms. Hillery has still asserted a FDCPA claim against Saxon.
Ms. Hillery tries to argue that the initial communication was not the letter of September 28, 2007,
but rather her letter of May 28, 2009.  *See* Opp'n at 9.  This makes no sense because 15 U.S.C. §
1692g(a) talks about an "initial communication *with* a consumer" (emphasis added), not an initial
communication *from* a consumer.  In any event, the Court has already concluded specifically to the
contrary, and Ms. Hillery has not moved to reconsider or show that she has met the requirements for
a motion to reconsider under Civil Local Rule 7-9.  Accordingly, the Court dismisses the claim with
prejudice.  In addition, as discussed below, the Court sanctions Ms. Hillery's counsel because this
claim should not have been asserted given the Court's prior ruling.

7

E. <u>Claim for Elder Financial Abuse</u>

Previously, the Court dismissed the claim for elder financial abuse but gave Ms. Hillery leave to amend to include specific allegations of malice. *See* Docket No. 70 (Order at 21). The Court required a showing of malice because the thrust of Ms. Hillery's claim, as reflected in her opposition to Consumer Solutions's first motion to dismiss, was that Consumer Solutions had improperly recorded a notice of default but such activity was subject to a qualified privilege under California Civil Code § 2924(a)(1).

As Consumer Solutions points out, the amended claim for elder financial abuse is not markedly different from the claim as originally pled. Below are the relevant excerpts from the amended claim. New additions have been bolded; removed text is indicated by a "strike out."

> 73. The circumstances of financial elder abuse have been set forth, and repeated, in this complaint. The elder abuse perpetrated by the C-Defendants include demanding money from Ruthie Hillery that they are not entitled to, particularly mortgage payments from the alleged August 18, 2006 New Century Mortgage loan and the payment of principal from that lawfully rescinded and now void loan. They have done this by attempting to enforce a rescinded loan transaction, rescinded pursuant to 15 U.S.C. § 1635f; by attempting to enforce a predatory loan transaction~~, predatory as defined by California Civil Code § 4973) (see California Civil Code § 4970 through 4979.8)~~; by attempting to enforce a fraudulent loan transaction, a fact apparent on the face of the documents provided to the defendants concerning this loan transaction of August 18, 2006; by attempting to enforce a loan transaction which is in violation of California Elder Financial Abuse law, abusive as set forth in California Welfare and Institutions Code §§ 15600 to 15650; by recording bogus and unlawful notices of default against Ruthie Hillery's home in May 2008 and again in June 2008; ~~by attempting to enforce a loan transaction whch is and was on its face a violation of the Federal Home Owner's Equity Protection Act both by failures to disclose and by excessive interest rates;~~ by demanding an arrearage of $49,743.40 in their May 2008 Notice of Default; **by unlawfully (and in violation of the Truth in Lending Act) demanding an arrearage in their June 2008 Notice of Default;** by failing to respond to Ruthie Hillery's letters which are attached as Exhibit 1 to this claim; **by MERS' presenting itself and acting as the legal beneficiary of the note and deed of trust, when in fact it was not;** by failing to produce any proof of ownership of the note or right to demand payment on the note of August 18, 2006 or assignment of that note; by failing to timely identify the owner and beneficiary of the alleged August 18, 2006 note when asked in the letters which are in Exhibit 1, a disclosure required by Truth in Lending Act

8

|   |   |
|---|---|
| | (15 U.S.C. § 1641(F)(2)) **and a disclosure mandated by California Civil Code § 2943(b)(1)**; by failing to timely provide a beneficiary statement as mandated by California Civil Code § 2943**, doing this to conceal the fact that they were seeking to impose upon Ruthie Hillery unlawful charges and fees**. |
| 74. | C-Defendants continued to engage in financial elder abuse by failing to honor the August 22, 2006 rescission and by attempting to foreclose on Ruthie Hillery's home **commencing in 2008 and going to the present**. |
| 75. | **Defendants have paid about twenty-five cents on the dollar of the August 18, 2006 loan amount when CONSUMER obtained from New Century Mortgage and the Bankruptcy Court. Defendants, working in conjunction with each other, have nonetheless attempted [to] seize in excess of $300,000 as gain on their investment, knowing that they were not entitled to this money.** |
| 76. | The actions of the C-Defendants in this matter have been wilful, fraudulent, malicious, and undertaken in bad faith. |

FACC ¶¶ 74-76. Consumer Solutions argues that, because the elder financial abuse claim as pled in the FACC is not materially different from the elder financial abuse claim as originally pled, the Court should dismiss the claim and with prejudice.

In her opposition, Ms. Hillery argues in essence that the wide range of conduct alleged in the FACC cannot all be privileged. In this respect, the Court does not necessarily disagree. In its prior order, the Court indicated that the actual recording of the notice of default (whether by the trustee or the beneficiary) was privileged, citing *Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008). *See* Docket No. 70 (Order at 20). But, as the court noted in *Kachlon*, other actions taken by the beneficiary that are related to the foreclosure proceedings would not be – *e.g.*, presenting the trustee with written instructions, a declaration of default, and a demand for sale. "[T]he 1996 amendment gives protection to '[t]he mailing, publication, and delivery of notices as required herein, and the performance of the procedures *set forth in this article*.'" *Kachlon*, 168 Cal. App. 4th at 345 (emphasis in original). That being said, Ms. Hillery did not focus on that wide range of conduct in opposing Consumer Solutions's first motion to dismiss, focusing instead on the recording of the notice of default.

9

To the extent Ms. Hillery now invokes the wide range of conduct as a reason why the § 2924(d) privilege should not apply, there are still problems with the elder financial abuse claim.

First, some of that conduct is privileged on a different basis. For example, Ms. Hillery asserts that Counter-Defendants have acted wrongfully in trying to foreclose, starting in 2008 *and going to the present*. However, acts taken by Counter-Defendants with respect to this litigation are privileged. *See* Cal. Civ. Code § 47(b)(2) (stating that a privileged publication or broadcast is one made in, *inter alia*, a judicial proceeding). As another example, Ms. Hillery asserts that Counter-Defendants have failed to produce proof of ownership of the note but that issue did not come up until this lawsuit.[5]

Second, some of that conduct should not have been included given the Court's prior ruling. More specifically, in its prior order, the Court dismissed with prejudice the California predatory lending claim. In spite of such, Ms. Hillery still alleges in her FACC that Counter-Defendants engaged in elder financial abuse "by attempting to enforce a predatory loan transaction." FACC ¶ 74.

Third, some of that conduct should not have been included because it makes no sense. More specifically, Ms. Hillery alleges that Counter-Defendants engaged in elder abuse because they engaged in elder abuse. *See* FACC ¶ 74 ("The elder abuse perpetrated by the C-Defendants include . . . attempting to enforce a loan transaction which is in violation of California Elder Financial Abuse law, abusive as set forth in California Welfare and Institutions Code §§ 15600 to 15650").

Finally, and most importantly, even if the wide range of conduct is not protected by the § 2924(d) privilege, Ms. Hillery must still show bad faith in order to prevail on her claim. As the Court noted in its previous order, under the Elder Abuse and Dependent Adult Civil Protection Act, "[a] person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secrete, appropriates or retains

---

[5] Under California Civil Code § 2943(b)(1), a debtor may ask the beneficiary or its authorized agent to provide "a true, correct, and complete copy of the note or other evidence of indebtedness . . . and a beneficiary statement." Cal. Civ. Code § 2943(b)(1). If Ms. Hillery argues that she made a request for the former via her counsel's letters from May to September 2008, that does not appear to be correct. Those letters did ask for a beneficiary statement but not for a copy of the note or other evidence of indebtedness.

10

possession of the property *in bad faith*." Cal. Wel. & Inst. Code § 15610.30(b) (emphasis added). Recent authority from the Supreme Court and the Ninth Circuit indicate that there must be facial plausibility for the allegation of bad faith – "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Moss*, 572 F.3d at 969.

In the instant case, the allegations made by Ms. Hillery do not rise to the level of such facial plausibility as demanded by *Moss*. Basically, the allegations in the paragraphs cited above may be grouped into the categories: (1) that Counter-Defendants have acted in bad faith because they did not give effect to Ms. Hillery's notice of rescission in August 2006; (2) that Counter-Defendants have acted in bad faith because MERS acted as if it were the beneficiary of the promissory note and deed of trust when it was not; and (3) that Counter-Defendants have acted in bad faith because they did not respond to her counsel's letters from May 24, 2008, through September 23, 2008.

With respect to the first category, the allegation of bad faith is not facially plausible because Ms. Hillery never indicated that she was willing to return the loan proceeds, a condition to rescission. *See Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003) (stating that "a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations" without questioning the condition that restitution must be paid somehow). Moreover, the August 2006 notice of rescission went to New Century, not Consumer Solutions or Saxon.

With respect to the second category, the deed of trust specifies that MERS is in fact the legal beneficiary. *See* Docket No. 61 (Gunderson Decl., Ex. B) (Deed of Trust at 3) (explaining that "[t]he beneficiary of this Security Instrument is MERS," although "solely as nominee for Lender and Lender's successors and assigns"; also stating that "MERS holds only legal title to the interests granted by Borrower in this Security Instrument").

As for the third and final category, the letters sent by Ms. Hillery's counsel asked the recipients to (1) identify the owner or master servicer of the debt (citing 15 U.S.C. § 1641(f)(2) in support) and/or (2) provide a beneficiary statement (citing California Civil Code § 2943 in support). More specifically:

- In the letter, dated May 24, 2008, to Saxon, counsel asked for both pieces of information.
- In the letter, dated May 24, 2008, to MERS, counsel asked for both pieces of information.
- In the letter, dated July 10, 2008, to Saxon, counsel asked only for a beneficiary statement.
- In the letter, dated September 23, 2008, to Everhome, counsel asked for both pieces of information.
- In the second letter, dated September 23, 2008, to Everhome, counsel asked only for a beneficiary statement.

As indicated above, Everhome's failure to respond cannot be any indication of bad faith on the part of Counter-Defendants because, at the time, Everhome was not the servicer of the Hillery loan. It did not become the servicer until October 1, 2008.

The failure of Consumer Solutions to respond cannot be any indication of bad faith because none of the letters were directed to Consumer Solutions. Nor is there any indication that Consumer Solutions had knowledge of those letters. To the extent Ms. Hillery argues that Consumer Solutions should be held vicariously liable because its agents received the letters, she provides no authority to support the claim that the bad faith of an agent can be imputed to the principal for purposes of the elder financial abuse law. The law requires malice. Generally, malice of an agent is not imputed to the principal. *Cf.* Cal. Civ. Code § 3294(b) (providing that an employer is not liable for punitive damages based on acts of employee "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice"). Moreover, unlike the situation with TILA discussed above, debtors may have a remedy against the agent who violates the elder financial abuse law even without vicarious liability. Thus, there is no basis to imply a legislative intent to impose vicarious liability.

As for Saxon's failure to respond, it was asked in only one letter (the May 24 letter) for information about the owner or master servicer. The failure is consistent with a finding of bad faith. *Cf.* Cal. Civ. Code § 2943(e)(4) (providing that, "[i]f a beneficiary for a period of 21 days after receipt of the written demand *willfully* fails to prepare and deliver the statement, he or she is liable to

the entitled person for all damages which he or she may sustain by reason of the refusal and, whether or not actual damages are sustained, he or she shall forfeit to the entitled person the sum of three hundred dollars"; defining "willfully" as "an intentional failure to comply with the requirements of this section without just cause or excuse") (emphasis added). However, it is also equally consistent with negligence. *See Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1080 (2007) (stating that trust deed holder's failure to provide property owner with beneficiary statement was sufficiently wrongful to support negligent interference with prospective economic relations claim). Under *Iqbal*, *Bell Atlantic*, and *Moss*, such a showing is not sufficient to establish facial plausibility.

Saxon's failure to respond to two letters (the letters of May 24 and July 10) which asked for a beneficiary statement, however, adds to the showing of bad faith. Failure to respond to Ms. Hillery's follow up letter of July 10 does suggest willful behavior in disregard of legal requirements and thus establishes bad faith with sufficient facial plausibility under *Iqbal*. Hence, the amended counterclaim states a viable cause of action for elder financial abuse against Saxon.

F.      Fraud Claim

In its prior order, the Court dismissed the fraud claim without prejudice on the basis that Ms. Hillery had failed to meet the particularity requirement of Federal Rule of Civil Procedure 9(b). The Court noted that "'[a]verments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.'" Docket No. 70 (Order at 22). It further noted that typically the specific identity of the corporate agent who committed the fraud must be alleged. *See* Docket No. 70 (Order at 22).

In her FACC, Ms. Hillery did not address these specific points made by the Court. In fact, her amended fraud claim contains basically the same allegations as the original fraud claim. The amended fraud claim basically parrots ¶ 74 quoted above for the elder financial abuse claim. For that reason, the Court dismisses the claim with prejudice.

To the extent Ms. Hillery argues that the Court erred in its previous ruling – *e.g.*, that some (though certainly not all) of the allegations were specific enough – there is another problem that Ms. Hillery has not addressed. A fraud claim requires justifiable reliance. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) ("The elements of fraud are: (1) a misrepresentation

13

(false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."). There is no factual allegation establishing such reliance.

At the hearing, Ms. Hillery argued for the first time that she did rely on Counter-Defendants' alleged fraud. According to Ms. Hillery, Counter-Defendants misrepresented to her that she owed them a debt secured by her real property, and she relied on this representation by hiring counsel to assist her. The problem for Ms. Hillery is that she did not hire counsel to assist her because she believed Counter-Defendants' representation. Rather, she hired counsel because she did *not* believe that representation – *i.e.*, she believed that the loan was rescinded or should have been rescinded. Ms. Hillery fails to demonstrate any reliance based on her trust in any representation of fact falsely made by Counter-Defendants.

Accordingly, for all of the above reasons, the Court dismisses the fraud claim with prejudice.

G.   Punitive Damages

Because the Court is allowing the elder financial abuse claim proceed with respect to Saxon, the Court shall not strike the request for punitive damages. The Court notes, however, that given its rulings here there is no punitive damages claim against Consumer Solutions. With respect to Consumer Solutions, the only claims that remain are the TILA damages and rescission claims and the declaratory relief claim (based on the TILA rescission claim). *See Tasaranta v. Homecomings Fin.*, No. 09-CV-01722-H (WMC), 2009 U.S. Dist. LEXIS 87372, at *20 (S.D. Cal. Sept. 21, 2009) (noting that, pursuant to 15 U.S.C. § 1640, "TILA prescribes its own remedies and does not authorize awards of punitive damages"); *Pagtalunan v. Reunion Mortg., Inc.*, No. C-09-00162 EDL, 2009 U.S. Dist. LEXIS 34811, at *16 (N.D. Cal. Apr. 8, 2009) (stating that "[p]unitive damages are not available for breach of contract or TILA actions"); *Marcelos v. Dominguez*, No. C 08-00056 WHA, 2008 U.S. Dist. LEXIS 91155, at *33-34 (N.D. Cal. July 18, 2009) (stating that "TILA does not provide for punitive damages"); Buick v. World Sav. Bank, 637 F. Supp. 2d 765, 776 (E.D. Cal. 2008) (stating that, "since Plaintiffs' only remaining cause of action arises under TILA, which prescribes its own remedies under 15 U.S.C. § 1640 and does not provide for the recovery of punitive damages, Plaintiffs' prayer for punitive damages cannot stand").

H.   Sanctions

Under 28 U.S.C. § 1927,

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. In the instant case, Consumer Solutions has moved for sanctions against both Ms. Hillery and her counsel, Thomas Spielbauer, pursuant to § 1927.

The Court shall not sanction Ms. Hillery pursuant to § 1927 because the statute allows only for sanctions against "an attorney or other person admitted to conduct cases" in a federal court. 28 U.S.C. § 1927; *see also* 2-11 Moore's Fed. Prac. – Civ. § 11.40 (noting that "[c]lients may not be subjected to sanctions under Section 1927"). Ms. Hillery is not an attorney or such a person.

In addition, the Court shall not award any sanctions to Consumer Solutions. Although the Court is dismissing the elder financial abuse and fraud claims against Consumer Solutions, it cannot say that Ms. Hillery's counsel unreasonably and vexatiously multiplied proceedings by resasserting those claims.

The Court, however, shall award sanctions to Saxon. The Court has the authority to issue sanctions sua sponte because Mr. Spielbauer was on notice of the possible sanction as a result of both Saxon's motion, *see* Docket No. 78 (Mot. at 5-6), and the hearing on the motion and further was given an opportunity to be heard at the same hearing. *See Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (noting that "a district court acting under § 1927 . . . may, in its sound discretion, impose sanctions sua sponte as long as it provides the attorney with notice regarding the sanctionable conduct and an opportunity to be heard"). Sanctions are warranted because, as discussed above, the RESPA and FDCA claims should not have been asserted against Saxon based on the Court's prior order. In short, Mr. Spielbauer recklessly, if not knowingly, raised frivolous claims. *See Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 436 (9th Cir. 1996) (stating that "section 1927 sanctions 'must be supported by a finding of subjective bad faith'" and that "'[b]ad faith is present when an attorney knowingly or recklessly

15

raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent'").

The Court notes that Mr. Spielbauer could have moved on Ms. Hillery's behalf for reconsideration of the Court's prior order, but he did not do so. Nor did he argue in Ms. Hillery's opposition that the RESPA and FDCPA claims were being asserted only to preserve arguments for appeal. Rather, Mr. Spielbauer defended the claims on the merits – merits which the Court had clearly rejected in its prior order.

The Court further notes that, at the hearing, Mr. Spielbauer pointed out that the Court's prior order dismissed the RESPA and FDCPA claims against Consumer Solutions only and not Saxon. However, the Court specifically warned Ms. Hillery and her counsel in its prior order that "much of the reasoning would be applicable to any claim asserted against either Saxon or MERS." Docket No. 70 (Order at 1 n.1).

Accordingly, the Court sanctions Mr. Spielbauer for reasserting the meritless RESPA and FDCPA claims against Saxon. Within a week of the date of this order, Saxon shall file a declaration stating what costs, expenses, and attorneys' fees were reasonably incurred because of the improper filing of the RESPA and FDCPA claims. The Court notes that it does not expect this sum to be excessive given that Saxon addressed these claims in approximately four pages total in its opening and reply briefs. If Mr. Spielbauer believes the costs, expenses, and fees to be reasonable, then he should pay Saxon that sum within two weeks of the date of this order. If Mr. Spielbauer believes that the costs, expenses, and fees are not reasonable, then, within two weeks of the date of this order, he shall file a brief explaining why the sum is not reasonable. The Court shall then rule on the amount of sanctions to be awarded without a hearing unless otherwise ordered.

///
///
///
///
///
///

16

### III. CONCLUSION

For the foregoing reasons, Consumer Solutions's motion to dismiss is granted in part and denied in part. Saxon's motion to dismiss is also granted in part and denied in part. Consumer Solutions has twenty (20) days from the date of this order to move to dismiss the new TILA damages claim based on an alleged violation of § 1641(f)(2).

This order disposes of Docket Nos. 72 and 78.

IT IS SO ORDERED.

Dated: January 8, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge