**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7
8   CONSUMER SOLUTIONS REO, LLC,              No. C-08-4357 EMC
9              Plaintiff,
10       v.                                    **ORDER GRANTING IN PART AND
                                               DENYING IN PART COUNTER
                                               DEFENDANT CONSUMER SOLUTIONS**
11  RUTHIE B. HILLERY, *et al.*,               **REO, LLC'S MOTION TO DISMISS**
12             Defendants.                     **(Docket No. 111)**
13  _____/
14

15          Previously, the Court issued an order granting in part and denying in part Counter-Defendant

16  Consumer Solutions REO, LLC's motion to dismiss.  *See* Docket No. 102 (order, filed on 1/8/2010).

17  In the order, the Court gave Consumer Solutions leave to file another motion to dismiss to challenge

18  the TILA damages claim advanced by Ms. Hillery – *i.e.*, on the basis that Consumer Solutions could

19  not be held vicariously liable for the acts or omissions of its servicer-agent Saxon Mortgage

20  Services, Inc.  Consumer Solutions has now filed a motion to dismiss on that basis.  In addition, in

21  the motion, Consumer Solutions asks that the Court rule on the argument it made in its prior motion

22  to dismiss, *i.e.*, that the TILA rescission claim asserted by Ms. Hillery should be dismissed because

23  the specific remedy she seeks is not available under TILA and because she is both unable and

24  unwilling to tender the loan proceeds.

25          Having considered the parties' briefs and accompanying submissions, as well as the oral

26  argument of counsel and all other evidence of record, the Court hereby **GRANTS** in part and

27  **DENIES** in part the motion to dismiss.

28

**United States District Court**
For the Northern District of California

# I.   DISCUSSION

A.   TILA Rescission Claim

As noted above, Consumer Solutions made two arguments in its prior motion as to why the TILA rescission claim should be dismissed: (1) because the specific remedy she seeks is not unavailable under TILA and (2) because she is both unable and unwilling to tender the loan proceeds.

Regarding the first argument, Consumer Solutions correctly points out that the specific remedy desired by Ms. Hillery is ownership of the real property without having to return any loan proceeds and without being subject to any mortgage. *See* Docket No. 71 (Countercl., Prayer for Relief ¶ 1(a)-(b)) (asking for a declaration that Consumer Solutions does not have a valid security interest in the property and that Ms. Hillery may retain the loan proceeds without further obligation). Consumer Solutions also correctly notes that, in a prior order, the Court basically rejected the possibility of this particular remedy. More specifically, in dismissing Ms. Hillery's claim for quiet title, the Court rejected Ms. Hillery's arguments that she owns the property outright or that the loan is unsecured. *See* Docket No. 70 (Order at 12).

That being said, that does not mean that Ms. Hillery's TILA rescission claim should be dismissed. In her counterclaims, Ms. Hillery also asks the Court for any relief it may deem proper, *see* Docket No. 71 (Countercl., Prayer for Relief ¶ 15); therefore, something less than the specific relief desired by Ms. Hillery is permitted. Notably, courts have crafted rescission terms whereby a debtor is allowed to repay loan proceeds over a reasonable period of time – and sometimes even interest free.[1] Therefore, Consumer Solutions's claim that novation of a loan is not a remedy under

_____

[1] *See, e.g.*, *American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (stating that the trial court could have set terms for rescission allowing the plaintiffs "a time certain to tender the net loan proceeds, [but] it was unnecessary under the facts of this case" -- *i.e.*, where plaintiffs acknowledged inability to repay the loan and almost a year had passed from the date of exercising cancellation but plaintiffs had made no payments of either principal or interest); *Lomboy v. SCME Mortg. Bankers*, No. C-09-1160 SC, 2009 U.S. Dist. LEXIS 44158, at *19 (N.D. Cal. May 26, 2009) (noting that court had authority to allow plaintiff to tender the loan proceeds over time and that "it would be inappropriate to foreclose this possibility upon a motion to dismiss"); *Dawson v. Thomas (In re Dawson)*, 411 B.R. 1 (D.D.C. 2008) (finding it appropriate to give debtor a reasonable period of time to tender loan proceeds which in this case was eighteen months; also noting that some courts allow repayment in installments; *In re Sterten*, 352 B.R. 380, 387 (E.D. Penn. 2006) (concluding that it was appropriate to give consumer a reasonable time frame to repay creditor while creditor retains security

TILA, while technically correct, is not as a practical matter entirely accurate. Of course, it should also be noted that there does not appear to be any authority supporting the extreme position suggested by Ms. Hillery – *i.e.*, that the Court could order rescission on terms such as requiring Consumer Solutions to extend to her a forty- or fifty-year loan, completely interest free. *See* Opp'n at 2.

The question therefore becomes whether Consumer Solutions's second argument has any traction – *i.e.*, is Ms. Hillery unable or unwilling to tender the loan proceeds.[2] Consumer Solutions argues that Ms. Hillery has never pled ability to tender. However, a number of courts have expressly held that such an allegation need not be made in a complaint. *See, e.g.*, *Singh v. Washington Mut. Bank*, 2009 U.S. Dist. LEXIS 73315, at *10-11 (N.D. Cal. Aug. 19, 2009) (rejecting defendant's argument that ability to tender must be alleged in the complaint); *ING Bank v. Ahn*, No. C 09-995 TEH, 2009 U.S. Dist. LEXIS 60004, at *5 (N.D. Cal. July 13, 2009) (stating that "*Yamamoto* did not hold that a district court must, as a matter of law, dismiss a case if the ability to tender is not pleaded[;] [r]ather, all of these cases indicate that it is within the trial court's discretion to choose to dismiss where the court concludes that the party seeking rescission is incapable of performance"). Most recently, Judge Seeborg of this Court carefully reviewed the cases on this issue (which are admittedly divided) and closely analyzed the language of *Yamamoto*. *See Botelho v. U.S. Bank*, N.A., No. C 08-04316 RS, 2010 U.S. Dist. LEXIS 13127 (N.D. Cal. Feb. 16, 2010). He rejected the defendant's argument that, under *Yamamoto*, a district court may, in its discretion,

> require any plaintiff trying to state a claim for rescission under TILA
> to represent an ability to tender loan proceeds in the complaint. In
> effect, this would confer upon the district court the discretionary
> power to add, in particular cases and based on uncertain criteria, an

---

interest; restructuring loan so that consumer could make monthly payments over a period of twenty-five years, with interest); *Quenzer v. Advanta Mortg. Corp. USA*, Nos. 99-41732-13, 99-7127, 2005 Bankr. LEXIS 2627, at *12-13, 22 (D. Kan. Dec. 22, 2005) (concluding that interest should not be awarded in the case as an equitable condition of the right of rescission, particularly because plaintiff's ability to obtain necessary financing to repay balance owed to defendant would necessarily be impaired; but not permitting plaintiffs to tender obligation in installments and instead requiring full tender within sixty days).

[2] According to Consumer Solutions, a testimonial made by Ms. Hillery on her attorney's website and her statements to this Court reflect an inability and refusal to repay the loan proceeds. *See* Docket No. 72 (Mot. at 11).

United States District Court

For the Northern District of California

item to the list of elements required to state a rescission claim. *Yamamoto* does not authorize such an unorthodox procedure. It was decided in the procedural context of summary judgment, when the district court was in a position to consider a full range of evidence in deciding whether to condition rescission on tender.

The instant case stands in an entirely different procedural posture.  The litigation here has progressed only as far as the pleading stage. The Court cannot consider any evidence to show that the borrower lacks capacity to pay back what he has received, because there is no evidence of any kind before the Court.  There are only the averments of the complaint.  *Yamamoto* cannot be read to vest in the district courts discretion to require *some* plaintiffs to plead an extra element in their TILA complaints, but not to require it of others.

*Id.* at *12-13 (emphasis in original).  In finding there is no pleading requirement, the court emphasized *Yamamoto's* reference to need to consider "evidence" of ability to tender.  *See* 329 F.3d at 1173.  This Court concurs fully with Judge Seeborg's analysis.  Judge Seeborg's conclusion is bolstered by the fact that whether Ms. Hillery is unable or unwilling to tender the loan proceeds may be informed in part by what rescission terms the Court ultimately deems appropriate under *Yamamoto*, a factor that cannot be discerned at the pleading stage.

Accordingly, the Court denies the motion to dismiss the TILA rescission claim.

B.    TILA Damages Claim

Ms. Hillery's TILA damages claim against Consumer Solutions is predicated on an alleged violation of 15 U.S.C. § 1641(f)(2).  This statute provides that, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."  15 U.S.C. § 1641(f)(2).  According to Ms. Hillery, in 2008, she asked Saxon to provide the name of the loan's owner or master servicer, but Saxon failed to do so.  Ms. Hillery asserts that this failure to act by Saxon should be attributed to Consumer Solutions because Saxon was acting as Consumer Solutions's agent.

Consumer Solutions makes two basic arguments as to why Ms. Hillery's agency theory should be rejected.  Ultimately, the Court is not persuaded by either argument.

First, Consumer Solutions points out that 15 U.S.C. § 1641(a) indicates that assignee liability is intended to be restricted, providing that,

**United States District Court**
For the Northern District of California

1  
2  
3  
4  

> [e]xcept as otherwise specifically provided in this title [15 U.S.C. §§ 1601 *et seq.*], any civil action for a violation of this title [15 U.S.C. §§ 1601 *et seq.*] or proceeding under section 108 [15 U.S.C. § 1607] which may be brought against a creditor may be maintained against any assignee of such creditor *only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement*, except where the assignment was involuntary.

5   15 U.S.C. § 1641(a) (emphasis added). The Court agrees that § 1641(a) limits assignee liability.

6   Moreover, as Consumer Solutions notes, in the instant case, the alleged TILA violation (*i.e.*, failing

7   to provide the name of the owner or master servicer of the loan) has nothing to do with a disclosure

8   statement. That being said, that does not therefore establish that vicarious liability is barred for

9   violations of *§ 1641(f)(2)*. Section 1641(a) is distinct and separate from § 1641(f)(2), the statutory

10   provision at issue here. The express limitation of § 1641(a) – requiring that violations be "apparent

11   on the face of the disclosure statement" – makes it evident that the limitation addresses a specific

12   context, *i.e.*, the liability of successor assignees of a loan for disclosure violations committed by the

13   original lender. Section 1642(f)(2), the provision at issue in the instant case, concerns the wrongful

14   conduct of a servicer that acts on behalf of the defendant lender who happens to be an assignee. In

15   other words, § 1641(a) addresses horizontal liability between predecessor and successor whereas §

16   1641(f)(2) addresses potential vertical liability as between agent and principal.

17   　　Second, Consumer Solutions argues that, if Congress had intended vicarious liability to be

18   possible under § 1641(f)(2), it could easily have provided that an assignee could be liable for the

19   failure of its servicer to provide the information requested by the obligor. According to Consumer

20   Solutions, that Congress could easily have imposed such an obligation is underscored by the fact

21   that, in 2009, Congress amended § 1641 to add subsection (g) to the statute. Section 1641(g)(1)

22   provides as follows:

23  
24  
25  
26  

> In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the *creditor* that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including [*inter alia*] the identity, address, telephone number of the new creditor . . . .

27   15 U.S.C. § 1641(g)(1) (emphasis added). While this argument has force, it is not persuasive. If

28

**United States District Court**
For the Northern District of California

1 § 1641(g)(1) simply required a creditor to provide the above information *upon a request by the*

2 *obligor*, as in § 1641(f)(2), this would be strong evidence that Congress enacted § 1641(g)(1) to

3 effectuate a change to § 1641(f)(2) – by expanding liability from the servicer to the creditors.  This

4 would imply that prior to 2009, liability was limited to the servicer.  But § 1641(g)(1) does not

5 merely require action from a creditor only upon a request by the obligor.  Rather, § 1641(g)(1) puts

6 an affirmative obligation on the creditor to act, regardless of the obligor's conduct.  By doing so, it

7 does far more than arguably expand the list of parties who may be liable under § 1641(f)(2); it

8 changes the substantive obligations of creditors.  Therefore, contrary to what Consumer Solutions

9 argues, § 1641(g)(1)'s enactment does not implicitly presume that a creditor is not liable under §

10 1641(f)(2) for its servicer's failure to respond to a borrower's request for information.

11        Of course, the above discussion does not in and of itself establish that vicarious liability

12 under an agency theory is incorporated into TILA.  It simply indicates no clear Congressional intent

13 to preclude creditor liability under § 1641(f)(2).  The question then is whether agency principles

14 should be implied under § 1641(f)(2).  What little case law there is indicates that liability based on

15 an agency relationship is generally cognizable under TILA.  For example, in *Roach v. Option One*

16 *Mortgage Corp.*, 598 F. Supp. 2d 741, 753 (E.D. Va. 2009), the plaintiff claimed that

17 misrepresentations were made by the mortgage broker and that the lender was liable for the

18 misrepresentations because the broker was the lender's agent.  The court commented: "[I]t does

19 appear that an agent's affirmative, oral misrepresentations regarding provided disclosures might, in

20 some cases, cause the agent's principal to be liable for . . . a TILA violation." Id. at 753.  As another

21 example, in *In re Bumpers*, No. 03 C 111, 2003 U.S. Dist. LEXIS 26255 (N.D. Ill. Sept. 11, 2003),

22 the plaintiff claimed that there was a TILA violation based on inconsistent disclosure statements.

23 The court rejected the claim because the inconsistent statements were provided by two different

24 entities – (1) the lender and (2) the mortgage broker.  It indicated that, if there were an agency

25 relationship between the mortgage broker and the lender, then the plaintiff could say the inconsistent

26 statements had effectively been made by the same entity.  Although the court concluded that "the

27 record fail[ed] to contain sufficient facts such that a jury could reasonably infer an agency

28 relationship between [the two]," *id.* at *28, it assumed that agency principles applied.

United States District Court

For the Northern District of California

1    While neither of the above cases involve § 1641(f)(2), the specific statutory provision at

2    issue here, both demonstrate that courts have assumed that the TILA incorporates common law

3    agency theory.  Such an assumption would be consistent with the general rule that remedial laws

4    such as TILA designed to protect consumers should be liberally construed.  *See, e.g.*, *Hauk v. JP*

5    *Morgan Chase Bank United States*, 552 F.3d 1114, --- (9th Cir. 2009) ("To effectuate TILA's

6    purpose, a court must construe 'the Act's provisions liberally in favor of the consumer' and require

7    absolute compliance by creditors."); *Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 845 (8th Cir.

8    2009) ("TILA . . . was passed by Congress as a consumer protection act, and its provisions, as well

9    as Regulation Z, are remedial legislation, to be construed broadly in favor of consumers."); *Roberts*

10   *v. Fleet Bank*, 342 F.3d 260, 266 (3d Cir. 2003) ("As the TILA is a remedial consumer protection

11   statute, we have held it should be construed liberally in favor of the consumer.") (internal quotation

12   marks omitted); *Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948, 950 (6th Cir. 1998) ("We have

13   repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal

14   construction in favor of the consumer.").  That canon of statutory construction appears particularly

15   appropriate considering the importance of providing borrowers with information about the current

16   lender under § 1641(f)(2) in the increasingly prevalent context of, *e.g.*, securitized loans where the

17   identity of the lender may be difficult to ascertain.  Absent an indication of Congressional intent to

18   the contrary,[3] the Court holds that agency principles apply to § 1641(f)(2).

19   Accordingly, the Court rejects Consumer Solutions's position that vicarious liability based

20   on TILA is not possible under § 1641(f)(2).  At the same time, however, the Court dismisses without

21   prejudice the § 1641(f)(2) claim because, as currently pled by Ms. Hillery, it is not clear that

22   Consumer Solutions's liability is predicated on an alleged agency relationship that it has with Saxon.

23   Ms. Hillery shall be given leave to amend the § 1641(f)(2) claim to make explicit her theory of

24   liability.  In amending her complaint, Ms. Hillery is advised that she must comply with *Ashcroft v.*

25   *Iqbal*, 129 S. Ct. 1937 (2009), which requires that a plaintiff plead nonconclusory allegations in

26   support of a facially plausible claim.  *See id.* at 1949 (stating that "[a] claim has facial plausibility

27

28
    ─────────────────────
    [3] As discussed *infra*, § 1640(c) appears to place some limits on agency liability.

**United States District Court**
For the Northern District of California

1  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

2  the defendant is liable for the misconduct alleged").

3        As a final point, the Court notes that not only will Ms. Hillery have to establish an agency

4  relationship between Consumer Solutions and Saxon in order to prevail on her § 1641(f)(2) claim,

5  *see* Restat. (3d) of Agency § 1.01 (noting that "[a] relationship is not one of agency within the

6  common-law definition unless the agent consents to act on behalf of the principal, and the principal

7  has the right throughout the duration of the relationship to *control* the agent's acts") (emphasis

8  added), but she may have to defend against any affirmative defense asserted by Consumer Solutions,

9  including one that might be asserted under 15 U.S.C. § 1640(c).  Under that provision,

> [a] creditor or assignee may not be held liable in any action brought
> under this section [15 U.S.C. § 1640] or section 125 [15 U.S.C. §
> 1635] for a violation of this title [15 U.S.C. § 1601 *et seq.*] if the
> creditor or assignee shows by a preponderance of evidence that the
> violation was not intentional and resulted from a bona fide error
> notwithstanding the maintenance of procedures reasonably adapted to
> avoid any such error.

14  15 U.S.C. § 1640(c).  In contrast to the limitations of § 1641(a) discussed above, which addresses a

15  specific context not applicable to the § 1641(f)(2) claim, § 1640(c) is more broadly phased and

16  appears applicable to the § 1641(f)(2) claim.  At this juncture, however, the Court renders no

17  conclusion as that issue is not ripe.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**United States District Court**

For the Northern District of California

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Consumer Solutions's motion to dismiss is granted in part and denied in part.  The motion is denied with respect to the TILA rescission claim.  The motion is granted with respect to the TILA damages claim (*i.e.*, the § 1641(f)(2) claim); however, the dismissal is without prejudice and Ms. Hillery shall have twenty (20) days from the date of this order to address the deficiency identified above.

This order disposes of Docket No. 111.


IT IS SO ORDERED.


Dated:  March 24, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge

9